638 F.2d 665
 81-1 USTC P 13,387
 ESTATE OF William Wikoff SMITH, Deceased, George J.
Hauptfuhrer, Jr., Administrator Pro Tem.,
Petitioner-Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Appeal of Mary L. SMITH.
 No. 80-1582.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 15, 1980.
Decided Jan. 20, 1981.
 
 Irving R. Segal (argued), George H. Nofer, Bruce A. Rosenfield, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant.
 P. J. DiQuinzio (argued), Barbara W. Freedman, Dechert, Price & Rhoads, Philadelphia, Pa., for petitioner-appellee.
 Gayle P. Miller (argued), Ann B. Durney, Michael L. Paup, M. Carr Ferguson, Asst. Atty. Gen., Tax Division, Dept. of Justice, Washington, D. C., for respondent-appellee.
 Before HUNTER and WEIS, Circuit Judges, and FISHER,* District Judge.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 This appeal is from an order denying intervention in a Tax Court suit contesting an estate tax deficiency. The appellant had sought intervention to challenge the valuation of stock in her deceased husband's estate. A low valuation would have a substantial adverse impact upon the appellant, but at the same time a favorable effect on the beneficiaries of a residuary trust. In challenging the Commissioner's assessment, the administrator of the estate advocated a valuation lower than appellant desired. Appellant's petition to intervene in order to protect her interests was denied by a "special trial judge" of the Tax Court. We conclude that we lack jurisdiction to consider the appeal because authority had not been given the special trial judge to issue a decision of the Tax Court.
 
 
 2
 Appellant is the widow of William Wikoff Smith, who died testate in January 1976. She was appointed executrix under the will, which provides a marital trust for her and a residuary trust for the decedent's children. Mrs. Smith elected to take against the will and, under Pennsylvania law, became entitled to receive one-third the estate's net assets. Under the terms of the will, the residuary trust is liable for all death taxes.
 
 
 3
 At the time of his death, Mr. Smith had substantial stock holdings in Kewanee Industries, Inc. In October 1976, Mrs. Smith, in her capacity as executrix, filed a federal estate tax return reporting a date of death value of approximately $13.00 per share. On August 8, 1977, some twenty months after her husband's death, these shares were sold at a price of $47.50 per share. On April 14, 1978, the executrix filed a federal income tax return on behalf of the estate, asserting that the $13.00 per share valuation was erroneous and that since the correct value should have been $47.50 per share, no gain had been realized on the sale.
 
 
 4
 The beneficiaries of the residuary trust then petitioned the Common Pleas Court of Montgomery County, where the estate was being administered, to remove Mrs. Smith as executrix because of a conflict of interest. The court found that Mrs. Smith had a "deep and personal financial interest in seeing that a high valuation be settled on this stock." If the value placed on the stock were low, a substantial capital gains tax would be paid by the estate, thereby reducing the estate's net assets and, consequently, her share. On the other hand, if the value as of the date of death were high, the resulting increased estate tax would be paid solely by the residuary trust. The Common Pleas Court accordingly relieved Mrs. Smith, as executrix, of her responsibility for determining the estate's taxes for the year 1977. For that limited purpose, George J. Hauptfuhrer, Jr. was appointed administrator pro tem.
 
 
 5
 Hauptfuhrer promptly wrote to counsel for Mrs. Smith and the residuary beneficiaries and requested information about the value of the stock. At his request, Kidder, Peabody & Company, Inc. appraised the stock and concluded that the date of death value was between $26.00 and $29.00 per share. Hauptfuhrer also arranged to have counsel for all parties join him in a conference before the Internal Revenue Service Appeals Officer.
 
 
 6
 In September 1979, the Commissioner of Internal Revenue issued a notice of estate tax deficiency of $27,360,399.40 based upon a valuation of the Kewanee stock at $44.10 per share. The administrator filed a petition in the Tax Court seeking a redetermination of the deficiency.
 
 
 7
 Six weeks later Mrs. Smith moved to intervene, arguing that every dollar of difference in valuation would affect her to the extent of $500,000.00. The difference between the Kidder appraisal of $29.00 and her figure of $47.50 would therefore mean a loss of over $9,000,000.00. She alleged inadequate representation in the Tax Court because neither the administrator pro tem nor the Commissioner had any substantial interest in advocating her cause. With respect to the Commissioner's position, she argued that what was not paid in estate tax would be exacted as income tax, and that the government would receive the same amount in either case. Mrs. Smith also asserted that the administrator had taken the position that the stock was worth $26.00 to $29.00 per share and had all but agreed to a settlement at an undisclosed figure when the petition to intervene was filed. Furthermore, she contended that the administrator could not urge her position without sacrificing the interest of the beneficiaries of the residuary trust. The administrator and the Commissioner both opposed the intervention.
 
 
 8
 In a bench opinion, a special trial judge denied intervention, finding that neither party's interest was adverse to Mrs. Smith's and that she was adequately represented. In support of this conclusion, he stated that the Commissioner would seek a high valuation in order to maximize estate tax liability, and in that way promote Mrs. Smith's interest. He added that the administrator was an independent party, interested only in performing his duty of fairly evaluating the stock. Moreover, the special trial judge felt that allowing intervention would circumvent the state court's order that the administrator fairly represent the interests of all beneficiaries. Mrs. Smith appeals.
 
 
 9
 The Commissioner and administrator contend that the order below is not a "decision" of the Tax Court under 26 U.S.C. § 7482(a) (1976). The jurisdictional issue has two facets. As originally briefed and argued, the Commissioner and administrator challenged the order as being interlocutory and not a decision within the meaning of § 7482(a) because it did not dismiss the proceeding or determine the existence or absence of a deficiency. During oral argument, we raised a second issue bearing on the powers of a special trial judge and the jurisdictional effect to be given his order. At our request, the parties later submitted comments on the question.
 
 
 10
 Under 26 U.S.C. § 7482(a), a court of appeals has "exclusive jurisdiction to review the decisions of the Tax Court ... in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." Just what constitutes a "decision" for jurisdictional purposes is not defined by that section. However, in 26 U.S.C. § 7459(c) (1976), which addresses the "date of decision," there are references to certain orders of the Tax Court.
 
 
 11
 In Commissioner v. S. Frieder & Sons Co., 228 F.2d 478, 480 (3d Cir. 1955), we said a reading of § 7482(a) and § 7459(c) together led to the conclusion that, "normally at least," the word "decision" refers to two kinds of judicial actions by the Tax Court one, dismissing the petition before it or, two, formally determining the existence or absence of a deficiency. We found appealable in Frieder a Tax Court order declining jurisdiction over an asserted deficiency in the Commissioner's answer to a petition for redetermination of excess profits tax liability. This interpretation of the statute differed from the very restrictive approach of the Court of Appeals for the First Circuit in Commissioner v. Smith Paper, Inc., 222 F.2d 126 (1st Cir. 1955). As Judge Hastie put it, the order "had great substantive effect, limiting the proceedings to the extent of denying its essential nature. Such action merits characterization as a 'decision' for purposes of our appellate jurisdiction." 228 F.2d at 482; accord, Commissioner v. Seminole Manufacturing Co., 233 F.2d 395 (5th Cir. 1956).
 
 
 12
 The Commissioner maintains that Frieder is consistent with the rule he advocates, that § 7459(c) gives content to § 7482(a) and, absent an independent statutory grant of authority, appellate jurisdiction is limited to determinations of deficiencies and dismissals for lack of jurisdiction. A similar argument was presented in Louisville Builders Supply Co. v. Commissioner, 294 F.2d 333 (6th Cir. 1961), and rejected. In that case the court heard an appeal from a Tax Court order permitting the Commissioner to depose a witness. No petition for redetermination of tax or notice of tax deficiency had been filed. Finding that it had jurisdiction, the court of appeals noted that the order was not interlocutory and that a contrary ruling would result in the Tax Court having made a final, nonreviewable decision, a power not expressly granted by Congress.
 
 
 13
 Louisville Builders cited United States v. California Eastern Line, Inc., 348 U.S. 351, 75 S.Ct. 419, 99 L.Ed. 383 (1955), where the Supreme Court concluded that a court of appeals had jurisdiction to review Tax Court renegotiation orders. In discussing the statutory antecedent of § 7482(a),[1] Justice Black wrote, "The language of (that section) is broad enough to justify review.... And we cannot say that because the section was originally passed primarily to authorize review of decisions on revenue matters it should be held inapplicable to decisions on other justiciable matters entrusted to the Tax Court by Congress." 384 U.S. at 353-54, 75 S.Ct. at 420-421. Louisville Builders relied on this more generous interpretation of appellate jurisdiction in its rejection of the position urged by the Commissioner.
 
 
 14
 Two years after it decided Louisville Builders, the Sixth Circuit explained that case as holding that "some orders of the Tax Court made under certain unusual circumstances, are reviewable ... even though they do not fall within the provisions of Section 7459(c)." Licavoli v. Commissioner, 318 F.2d 281, 282 (6th Cir. 1963). But in order to be reviewable, the order must not be an interlocutory one. The court emphasized the importance of the fact in Louisville Builders that "(i)f not reviewable when made, (the order) could never be reviewed." Id. Accordingly, it had the finality required to be reviewable.
 
 
 15
 Although Commissioner v. Smith Paper, Inc., supra, still retains some viability, see, e. g., W. W. Windle Co. v. Commissioner, 550 F.2d 43 (1st Cir.), cert. denied, 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977), many of the cases which cite it, in reality, address interlocutory and not final orders. E. g., Licavoli v. Commissioner, supra. No satisfactory reasoning has emerged in the Smith line of cases to explain why its restrictive approach to appealability is required by statute or by policy. The Smith philosophy runs counter to the general rule favoring reviewability of final agency action, see 5 U.S.C. § 702 (1976), and the Supreme Court's expansive attitude in deciding in favor of reviewability of the Tax Court's decision in United States v. California Eastern Line, Inc., supra. For sound reasons a similar posture should be employed here.
 
 
 16
 Unquestionably an order of the Tax Court denying intervention to Mrs. Smith would be final. Nothing further would remain to be done on her petition and recourse, if any, would be through appeal. In a district court proceeding a similar matter would be ripe for appellate review, as a final order, McClune v. Shamah, 593 F.2d 482 (3d Cir. 1979), and we conclude that a Tax Court order denying intervention is a "decision" for the purposes of appellate jurisdiction.
 
 
 17
 We must next consider whether the order of the special trial judge is an order of the Tax Court.
 
 
 18
 Under 26 U.S.C. § 7456(c) (Supp. II 1978), the Chief Judge of the Tax Court may appoint commissioners (later denominated special trial judges)[2] who proceed under rules and regulations of the court. The statute specifically authorizes the assignment of declaratory judgment proceedings arising under §§ 7428 (tax exempt status of certain entities), 7476 (qualification of retirement plans), 7477 (transfer of property from the United States), and 7478 (status of certain governmental obligations) to commissioners. Further, "the court may authorize a commissioner to make the decision of the court with respect to such proceedings, subject to such condition and review as the court may by rule provide." 26 U.S.C. § 7456(c) (Supp. II 1978). Another section enables the Chief Judge to delegate the responsibility for rendering the decision of the court in disputes involving $5,000.00 or less to a special trial judge. 26 U.S.C. § 7463(g) (Supp. II 1978). By rule the Tax Court has chosen, however, to limit these delegations by requiring that before the decision of the special trial judge is filed, it must be submitted to and approved by the Chief Judge or another judge of the court. Tax Court Rules 183, 218, 230.
 
 
 19
 The Tax Court has also provided by rule that the Chief Judge may designate a special trial judge "to deal with any matter pending before the Court in accordance with these Rules and such directions as may be prescribed by the Chief Judge." Tax Court Rule 180. The powers and duties of a special trial judge are more fully described in Rule 181, authorizing him to regulate all proceedings before him including "hearings on motions," and "do(ing) all acts and tak(ing) all measures necessary or proper for the efficient performance of his duties." He is empowered to issue subpoenas, place witnesses under oath and examine them, and rule upon admissibility of evidence. He is given incidental authority for the conduct of trial or other proceedings.
 
 
 20
 In cases tried before a special trial judge, Rule 182 states that, unless otherwise provided, he shall file a report which includes findings of fact and an opinion. The parties may file exceptions with the court and request oral argument. The division of the Tax Court to which the case is assigned may then adopt, modify, or reject the report.
 
 
 21
 The rules make no formal provision for appeals from a special trial judge to the division or to a judge of the Tax Court in the event of a ruling which is final, but occurs before the ultimate disposition of the case. The appellant has advised us, however, that the clerk of the Tax Court as a matter of practice accepts petitions for this purpose. Thus, although not specifically provided by the rules, review by the Tax Court of a ruling by a special trial judge denying intervention is, in practice, available through petition.
 
 
 22
 In an order dated December 19, 1979, the Chief Judge of the Tax Court assigned a special trial judge, Francis J. Cantrel, to certain cases "for the purpose of conducting the hearing and ruling on the interlocutory matters with respect to each said case." Nothing in the designation purports to make an order of the special trial judge that of the Tax Court, nor is there any direction for review of his orders by a judge or division of the court.
 
 
 23
 The limited scope of the order assigning cases to special trial judge Cantrel contrasts with the designations in other situations. In assigning cases that Congress has said may finally be decided by special trial judges, the extent of the special trial judge's power has been explicitly defined. For example, in assigning cases with $5,000.00 or less in controversy, pursuant to 26 U.S.C. § 7463(g), the Chief Judge has clearly conferred authority on the special trial judge "to make the decision of this Court." General Order No. 7, Nov. 9, 1978, 71 T.C. at IV; cf. General Order No. 6, March 8, 1978, 69 T.C. at XV-XVI (unreviewed opinion of special trial judge does not constitute opinion of Tax Court).
 
 
 24
 Even if the Chief Judge had purported to extend such authority in the case at hand, it is questionable whether he could have done so within the power granted by the statute. The Tax Court itself is purely a creature of statute and has only the power given to it by Congress. Burns, Stix Friedman & Co. v. Commissioner, 57 T.C. 392, 396 (1971). The designation of the special trial judge to hear matters in the case at hand was not within the statute's provisions authorizing the Chief Judge to delegate responsibility to the special trial judge "to make the decision of the court" §§ 7428, 7463, 7476, 7477, and 7478.
 
 
 25
 Although special trial judges were obviously intended to assist the Tax Court in the disposition of its work, we find no indication that Congress intended to give the Chief Judge carte blanche to designate persons and confer on them all the authority given by the statute to duly appointed Tax Court judges. As we see it, the special trial judge acts in a capacity not dissimilar to that of a magistrate in district court. In statutorily limiting the magistrate's authority, Congress has explicitly set forth the conditions under which a magistrate's order may be directly appealed to a court of appeals. 28 U.S.C. § 636(c)(3) (Supp. III 1979). In all other circumstances the magistrate's work is first reviewed by a district judge. 18 U.S.C. § 3402 (1976); 28 U.S.C. § 636(b)(1), (c)(4) (1976 & Supp. III 1979). In the absence of authorization from Congress, we must assume that a similar procedure was intended for the Tax Court.
 
 
 26
 The appellant urges us to decide the appeal on the merits so that the controversy may be concluded expeditiously. We understand and are sympathetic to her concerns, but we are not free either to avoid the statutory limitation on our jurisdiction or to ignore the institutional requirement of exhaustion of remedies below. The judges of the Tax Court should be given the first opportunity to correct alleged errors of the special trial judge, and thus alleviate our already overburdened docket.
 
 
 27
 We conclude that in the circumstances here the special trial judge was not authorized to issue an order that would constitute a "decision" of the Tax Court. Accordingly, the appeal will be dismissed without prejudice to appellant's right to resort to this court after her contentions have been reviewed by the Tax Court.
 
 
 
 *
 Honorable Clarkson S. Fisher, Chief Judge, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Int.Rev.Code of 1939, ch. 5, § 1141(a), 53 Stat. 164
 
 
 [2]
 Tax Court Rule 3(d) provides:
 "The term Special Trial Judge ... refers to a Commissioner of the Court appointed pursuant to Section 7456(c) of the Code."