**INVERWORLD, LTD., Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 92–1058.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 13, 1992.

Decided Nov. 24, 1992.

T. Barry Kingham, New York City, with whom Samuel Rosenthal, Washington, D.C., was on the brief, for appellant.

Kenneth L. Greene, Attorney, Dept. of Justice, with whom Shirley D. Peterson, Asst. Atty. Gen., and Gary R. Allen, Atty., Dept. of Justice, Washington, D.C., were on the brief for appellee.

Before MIKVA, Chief Judge, WALD and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

Opinion concurring in part and concurring in the judgment filed by Chief Judge MIKVA.

WALD, Circuit Judge:

InverWorld, Ltd. ("InverWorld"), a Cayman Islands corporation, appeals a decision of the Tax Court denying leave to amend its petition to redetermine tax deficiencies in order to specifically contest corporate income tax deficiencies for 1984, 1985, and 1986. Because InverWorld's motion was made after the expiration of the statutory period in which a new claim could be filed in the Tax Court, that court could only allow the amendment if InverWorld's original petition had already put the corporate income tax claims at issue. The Tax Court found no objective indication in Inver-World's original petition that the corporate taxes had been disputed and accordingly denied InverWorld's motion to amend, thereby effectively denying InverWorld's claim as to those taxes. We affirm.

I. BACKGROUND

While the substantive interstices of the Internal Revenue Code are daunting indeed, its procedure for the collection of most taxes is prosaically straightforward. If the Commissioner of Internal Revenue (the "Commissioner") determines that a taxpayer has not paid all taxes owed, she mails a notice of deficiency to the taxpayer. See 26 U.S.C. § 6212(a). The taxpayer then has 90 days from the date of the notice (or 150 days if the notice is mailed to

an address outside the United States) to contest the Commissioner's action by petitioning the Tax Court to "redetermine" the deficiency. *See* 26 U.S.C. § 6213(a). In general, the Commissioner may not collect any money during this 90 day period or after a timely filed petition has been filed with the Tax Court. *See id.* Unless a taxpayer timely petitions the Tax Court for redetermination of a specific deficiency, however, the Tax Court has no jurisdiction over the taxpayer's claim, and the Commissioner is free to collect the taxes.[1] *See id.; see also* TAX CT. R. 41(a) ("No amendment shall be allowed after expiration of the time for filing the petition ... which would involve conferring jurisdiction on the Court over a matter which otherwise would not come within its jurisdiction under the petition as then on file.").

Pursuant to this scheme, the Commissioner mailed, under separate cover, two deficiency notices to InverWorld on September 7, 1990. One of the notices (the "First Notice") began: "In accordance with the provisions of existing internal revenue laws, notice is given that the determination of your liability for withholding of income tax as source for the taxable years ended December 31, 1984, December 31, 1985 and December 31, 1986, discloses a deficiency of $8,071,168.00, $16,697,809.00 and $21,610,869.00, respectively." This same First Notice also contained several other references to withholding taxes. On the "Statement–Income Tax Changes," a table in the notice which showed how the Commissioner tallied the total alleged deficiency, the Commissioner alluded to Form 1042, the withholding tax return form. An "Explanation of Adjustments" accompanying the Statement also alleged that InverWorld "had received gross income in the form of interest from sources within the United States for nonresident aliens," and noted that additional penalties were imposed for

failure to file "Annual Withholding Tax Returns."

The other notice (the "Second Notice") that the Commissioner mailed to InverWorld opened as follows: "We have determined that there is a deficiency (increase) in your income tax...." The Second Notice referred throughout to corporate income tax matters. The accompanying Statement–Income Tax Changes referred to Form 1120F, the foreign corporation income tax return. And the Explanation of Adjustments advised InverWorld that penalties had been assessed for failure to file "Income Tax Returns."

Asserting that it owed no taxes because it did not engage in a trade or business within the United States, InverWorld petitioned the Tax Court for a redetermination of deficiencies on December 3, 1990. For unexplained reasons, however, InverWorld's petition referred only to the First Notice and the amounts alleged as deficiencies therein.[2] Only the First Notice was attached as an exhibit to the petition. Throughout the petition, however, InverWorld referred to the alleged deficiencies not as ones relating to failure to withhold income taxes owed by third parties but rather in more general fashion as involving a dispute over "income tax." *See, e.g.,* Petition at ¶ 3 ("The deficiencies as determined by the Commissioner are for income tax....").

Because InverWorld's petition was silent on the subject of the corporate income tax deficiencies alleged in the Second Notice, the Commissioner assumed that the corporate income tax deficiencies—as opposed to the withholding tax deficiencies—were not in contest. Thus, on February 6, 1991, after the statutory period had run, he issued three Notices of Assessment demanding payment of some $900 million in corporate income taxes—the amounts set out in

---

1. If a taxpayer pays the alleged deficiency, however, she may then sue for a refund in the district court or the Claims Court. *See* 28 U.S.C. § 1346(a)(1).

2. The amounts mentioned in InverWorld's petition actually differed from the amounts set out

at the beginning of the First Notice. Both parties agree that the actual amounts are stated elsewhere in the First Notice. InverWorld was not confused by this mix-up since it contested the correct amounts in its original petition.

the Second Notice plus additionally accrued interest and penalties.

Predictably, InverWorld reacted quickly to seek protection from immediate collection of this nine-digit sum. On February 19, 1991, it filed a motion in the Tax Court to amend its original redetermination petition to include the corporate income tax deficiencies for which the Commissioner now demanded payment.[3] On January 27, 1992, the Tax Court denied InverWorld's motion to amend its petition. Because it was too late for InverWorld to add a new claim at this point, the Tax Court had to decide whether the original petition had *already* invoked the court's jurisdiction over the corporate income tax issue. While the Tax Court announced a policy in favor of construing the original petition liberally, it stated that the petition still must "contain objective facts indicating that a specific deficiency determination is contested before it is treated as a petition with respect to that determination." A petition could invoke Tax Court jurisdiction over a particular deficiency only if, at a minimum, it indicated: (1) the amount of the deficiencies the Commissioner determined the taxpayer owed; (2) the amount of that debt the taxpayer was contesting; and (3) the years in dispute. Because InverWorld's petition did not even mention the Second Notice much less contest any of the deficiencies alleged therein, the Tax Court decided that InverWorld's original petition could not meet this test as to the corporate income tax deficiencies. The Tax Court also found InverWorld's allusion to "income taxes" in its original petition insufficient to manifest an intent to contest the Second Notice's determinations.

The Tax Court's refusal to allow Inver-World to amend precludes any further action in that forum on the corporate income tax claims. InverWorld's withholding tax claim is still pending before the Tax Court, however. InverWorld is now attempting to appeal the denial of its motion to amend,

asserting that its original petition contained sufficient objective indications of an intent to dispute the corporate tax deficiencies to vest the Tax Court with jurisdiction over those claims.

## II. ANALYSIS

### A. *Jurisdiction*

■ Before getting to InverWorld's substantive claims, we must address the threshold question of our own jurisdiction to hear this appeal. Although neither party challenged our jurisdiction, we raised the issue *sua sponte* and requested briefing on it by the parties because several of our sibling circuits are split on whether parties may appeal Tax Court orders which dispose of one or more but not all joined claims. *Compare Wilson v. Commissioner*, 564 F.2d 1317, 1318 (9th Cir.1977) (*per curiam*) (finding appealable a Tax Court order denying taxpayer's motion to amend petition to contest a deficiency in an additional year), *cert. denied sub nom. Mercer v. Commissioner*, 439 U.S. 832, 99 S.Ct. 110, 58 L.Ed.2d 127 (1978) *with Schrader v. Commissioner*, 916 F.2d 361, 362–63 (6th Cir.1990) (*per curiam*) (holding that court lacked jurisdiction to review Tax Court's grant of motion to dismiss one year of a multiyear petition) *and Estate of Yaeger v. Commissioner*, 801 F.2d 96, 98 (2d Cir. 1986) (holding that court lacked jurisdiction to review Tax Court's grant of taxpayer's motion to dismiss affecting one year of a multiple year dispute because the Tax Court had not disposed of the "entire case"). Ultimately, but not effortlessly, we come down on the side of the Ninth Circuit and find that we have jurisdiction over such an appeal.

Our jurisdiction in this context is governed by 26 U.S.C. § 7482(a)(1), which states in relevant part:

> The United States Courts of Appeals ... shall have exclusive jurisdiction to review the decisions of the Tax Court ... in the

---

3. InverWorld also sought a temporary restraining order and preliminary injunction in the United States District Court for the District of Columbia. That court denied relief, and an appeal to this court was dismissed as moot upon

the release of the Tax Court's order denying InverWorld's motion to amend its petition. Collection activities have been postponed on the basis of an agreement between the parties. *See* Brief of Appellant 4 n. 1.

same manner and to the same extent as decisions of the district court in civil actions tried without a jury.

Several courts have held that § 7482(a)(1) provides jurisdiction over all *final* decisions of the Tax Court. *See, e.g., Ryan v. Commissioner,* 680 F.2d 324, 326 (3d Cir.1982) ("Numerous cases hold that a court of appeals may consider an appeal as long as it arises out of a final decision of the Tax Court."); *Estate of Dixon v. Commissioner,* 666 F.2d 386, 388 (9th Cir.1982) ("The thrust of the decisions is that final (not interlocutory) orders of the Tax Court *are* appealable.") (emphasis in original); *Estate of Smith v. Commissioner,* 638 F.2d 665, 668 (3d Cir.1981); *Wilson v. Commissioner,* 564 F.2d 1317, 1318 (9th Cir.1977) (*per curiam*), *cert. denied sub nom. Mercer v. Commissioner,* 439 U.S. 832, 99 S.Ct. 110, 58 L.Ed.2d 127 (1978); *see also Louisville Builders Supply Co. v. Commissioner,* 294 F.2d 333, 339 (6th Cir.1961).

■ Other courts, relying on language in 26 U.S.C. § 7459(c),[4] however, have found that § 7482(a)(1) jurisdiction exists only when there has been a formal determination by the Tax Court of a deficiency (or lack thereof) or when an entire "proceeding" has been dismissed for lack of jurisdiction. *See, e.g., Commissioner v. Smith Paper, Inc.,* 222 F.2d 126, 129 (1st Cir.1955) (order granting taxpayer's motion to strike Commissioner's amendment to his answer was not reviewable because the rest of the "proceeding" remained in front of the Tax Court). But we can find no reason to believe that the definition of decision in § 7459(c)—a provision that appears to deal exclusively with the date on which decisions are rendered—in any way meant to limit appellate jurisdiction over those decisions; § 7482(a)(1) is the controlling provision dealing with appellate review. *See Estate of Smith,* 638 F.2d at 668 (noting

that the *Smith Paper* rule is not required by the statute). Moreover, applied strictly, the *Smith Paper* rule would result in many undeniably final orders—for example, denials of motions to intervene (the issue in several of the prior § 7482 cases)—not becoming appealable until the end of the trial and, if then found to be in error, requiring that entire trials be repeated. Perhaps for that reason, the *Smith Paper* approach has been applied most often in denying review of interlocutory, not final, orders. *See id.* After studying the reasoning of the circuits that have either adopted the *Smith Paper* approach or rejected it as unnecessary and unworkable, we believe that finality of the Tax Court's order should be the criterion for § 7482(a)(1) appellate jurisdiction. As our subsequent discussion of the proceedings in this case shows, that course avoids great inconvenience to both parties and does not in any way conflict with the intent of the drafters of § 7482(a)(1).

Applying general principles familiar from appeals of district court decisions under 28 U.S.C. § 1291, there is no question that the Tax Court's decision in this case is final. That court has made an unequivocal determination that, because of the inadequacy of InverWorld's original petition, InverWorld failed to invoke Tax Court jurisdiction over InverWorld's corporate income tax deficiency claim. There is nothing left to be done by the Tax Court as to that claim for relief, and InverWorld is legally subject to immediate collection action on that deficiency.[5] A similar district court decision would be considered final under § 1291 because the court has completely disposed of the claim. *See generally Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956) (dismissal of some but not all joined claims is final under § 1291). For example, in *Lockett v. General Finance Loan Co.,* 623

---

**4.** That provision states:

A decision of the Tax Court (except a decision dismissing a proceeding for lack of jurisdiction) shall be held to be rendered upon the date that an order specifying the amount of the deficiency is entered in the records of the Tax Court.... [I]f the Tax court dismisses a proceeding for lack of jurisdiction, an order to that effect shall

be entered in the records of the Tax Court, and the decision shall be held to be rendered upon the date of such entry.

**5.** InverWorld's counsel said at oral argument that the IRS's initiation of collection action on the corporate income tax deficiency led InverWorld to seek relief from this court.

F.2d 1128 (5th Cir.1980), the Fifth Circuit found a district court's denial of leave to amend a complaint to add a party to be a final decision because the statute of limitations had run and would bar a separate suit. *See id.* at 1129–30 ("[T]he district court's denial of [the plaintiff's] motion to amend effectively terminates [his] claim.... In this circumstance, we hold that the district court has finally adjudicated [the plaintiff's] claim...."). Analogous reasoning has lead the Ninth Circuit to find a similar Tax Court decision to be final under § 7482(a)(1). In *Wilson v. Commissioner*, the court found that the Tax Court's dismissal for lack of jurisdiction of one year of a multiyear petition was "a final decision on [that] cause of action." 564 F.2d at 1318.

Of course, the decision not to entertain the corporate tax amendments would be eventually appealable at the end of the Tax Court "proceeding" still pending, but now limited to InverWorld's withholding tax claims. It is indeed that fact that has convinced two other circuits to diverge from the *Wilson* rationale. *See Schrader v. Commissioner*, 916 F.2d 361, 362–63 (6th Cir.1990) (*per curiam*); *Estate of Yaeger v. Commissioner*, 801 F.2d 96, 98 (2d Cir.1986). While future appealability may be relevant in making the essentially pragmatic judgment as to whether a decision is final, *see Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152–53, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964), we find, in this situation, that the injustice to the taxpayer (as well as the inconvenience to the Commissioner and the Tax Court) caused by delaying an appeal from what is essentially a dismissal of InverWorld's claim far outweighs the possible inconvenience to an appellate court in hearing two separate appeals. *Cf. Schrader*, 916 F.2d at 363 (arguing that convenience to the parties and the

court must be balanced to determine finality in this context). InverWorld's interest in an immediate appeal is the most obvious; if we deny jurisdiction, it (and similarly situated taxpayers) must immediately pay an entire deficiency without review of a potentially erroneous Tax Court determination until some later point when the Tax Court has resolved an entirely different deficiency claim. The Commissioner also believes that allowing the appeal now will serve his interest in prompt resolution of tax disputes. Finally, public and judicial resources are more likely to be saved if we accept than if we deny jurisdiction. Should we delay review but ultimately overturn the Tax Court's jurisdictional finding, a second trial would be necessary with the attendant expenditure of additional judicial resources that consolidation of these claims was designed to avoid in the first place. *Cf. Tenneco Resins, Inc. v. Reeves Brothers, Inc.*, 736 F.2d 1508, 1512 (Fed.Cir.1984) (finding denial of a motion to amend final for appeal purposes largely because the possibility of a second trial contravened principles of judicial economy). Additionally, contrary to *Estate of Yaeger*, we do not think that ruling in favor of jurisdiction here would create havoc for litigants trying to determine the proper time to file an appeal. *See Estate of Yaeger*, 801 F.2d at 98. Confusion among taxpayers and lawyers will result only if the court does not establish any clear-cut rule at all. A bright-line rule that allows an appeal from a denial of jurisdiction over one but not all the separate claims in a petition would provide the explicit guidance litigants and the Commissioner seek.

Some courts have pointed to the fact that the Tax Court lacks a rule analogous to Federal Rule of Civil Procedure 54(b),[6] *see Estate of Yaeger*, 801 F.2d at 97, 98, as an

---

6. Rule 54(b) provides:
   When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or

other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

indication that a decision such as this one is not final. Rule 54(b) requires a district court to direct entry of a final judgment on one of several joined claims and certify an appeal on the completed claim before we may review it. But we do not find the absence of a Tax Court rule similar to Rule 54(b) at all relevant to our finality determination. Rule 54(b) does not "create" finality under § 1291 where it does not *already* exist, it merely allows a district court formally to decree a decision final and to determine which final decisions in a consolidated proceeding are subject to immediate appeal. *See* 10 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE, § 2658, at 71 (2d ed. 1983) ("Rule 54(b) generally does not apply to orders that are not final under Section 1291 of Title 28. . . ."). In *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956), the Supreme Court repeatedly stressed that the enactment of Rule 54(b) provided a more flexible mechanism for determining when final decisions could be appealed, but it did not alter the basic concept of finality: the enactment of Rule 54(b) "authorized a limited relaxation of the former practice that, in multiple claims actions, *all* the claims had to be finally decided before an appeal could be entertained from a final decision upon any of them." *Id.* at 434, 76 S.Ct. at 899 (emphasis in original); *id.* at 435, 76 S.Ct. at 899 (Rule 54(b), as amended, "does not relax the finality required of each decision, as an individual claim, to render it appealable"); *see also id.* at 438, 76 S.Ct. at 901 ("[Rule 54(b)] does not supersede any statute controlling appellate jurisdiction."). Thus, Rule 54(b) has no impact on whether a decision is sufficiently final to allow review.

■ Rule 54(b) has also been invoked for the proposition that, regardless of finality, allowing an *immediate* appeal in this instance contravenes § 7482(a)(1)'s injunction that review be "in the same manner and to the same extent" as review of district court decisions. This argument is based on a false premise that "in the same manner" refers to the availability of an immediate appeal. But its legislative history says otherwise; that phrase was intended only to alter the *scope* of review of Tax Court decisions once an appeal is granted. Congress amended what is now § 7482 in 1948 in response to *Dobson v. Commissioner,* 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248 (1943), which held that review of Tax Court decisions was to be extremely limited and deferential. *See id.* at 501, 64 S.Ct. at 246. Congress was explicit in describing that case as the sole reason for adding the phrase:

> Section 1141 [now § 7482] of the Internal Revenue Code provides for court review of Tax Court decisions. From the time this appellate review was established by the Revenue Act of 1926 until the *Dobson* decision in 1943, there had been no suggestion that the review of the Tax Court decisions was any more limited than the appellate review of decisions of the United States District Courts. It was assumed by the courts that, on appeal from the Tax Court, questions of law were fully reviewable and questions of fact were subject to the same sort of limited review that prevailed on appeals from the United States District Courts. The Supreme Court in the *Dobson* case, however, created a new rule of law . . .
>
> . . . . This provision . . . restores to the circuit courts of appeal the power to review cases from the Tax Court in the same manner and to the same extent as it has power to review other cases— whether tax cases or nontax cases—coming from a District Court in a case tried without a jury.

*Views of the Committee on the Judiciary with Respect to Senate Amendments to H.R. 3214, reprinted in* 94 CONG.REC. 8501 (1948). Thus, the "in the same manner" phrase was not intended to bind the courts to any particular procedure for determining which *final* decisions are immediately appealable.

Finally, even if § 7482(a)(1) is read with an eye to harmonizing procedures for appealing Tax Court and district court decisions, that arguably favors immediate review of Tax Court determinations of this sort. Under Rule 54(b), we rely on the

district court to act as a "dispatcher"—releasing some final decisions during the course of a proceeding, and holding some up for later review at the end of the entire proceeding. *See Sears, Roebuck,* 351 U.S. at 435, 76 S.Ct. at 899. Obviously, as the *Estate of Yaeger* court pointed out, *see* 801 F.2d at 98, absent such a dispatcher, an immediate appeal of the Tax Court decision here will differ in some aspects from the way in which a district court appeal is processed. But, of course, the same would be true of the opposite rule adopted by the Second and Sixth Circuits: allowing an appeal of a Tax Court decision only if it disposes of an "entire case" will not operate "in the same manner" as an appeal of a district court decision. Short of judicially imposing Rule 54(b) on the Tax Court, we can never attain precisely the same manner of review from both courts. Of the two choices, allowing immediate review of Tax Court decisions that dispose of entirely separate claims seems to be more consistent with the general congressional intent behind § 7482(a)(1). According to the Supreme Court, the enactment of the original Rule 54(b) in 1939 was designed to relax the "single judicial unit" theory which had required all claims in an action to be disposed of before any claim could be reviewed. *See Sears, Roebuck,* 351 U.S. at 432, 76 S.Ct. at 898. Thus, when Congress inserted the "in the same manner" language into § 7482(a)(1) in 1948, *see* Pub.L. No. 80–773, 62 Stat. 869, 991–92 (1948), the district courts were already employing a more flexible system which allowed final decisions on some claims to be appealed prior to disposition of all joined claims. If Congress' aim was to treat the Tax Court as much like district courts as possible, it would not likely have locked the Tax Court into the "single judicial unit" theory which had already been discarded for the district courts. Admittedly, any hybrid system we adopt will be different from our review of district court decisions because in the district court the trial judge has essentially unreviewable discretion to determine which final decisions can be appealed immediately. Yet, we believe that the more liberal appeal rule we have chosen is broadly con-

sistent with Congress' intent to allow appeals from final decisions where there is "no just reason for delay." Fed.R.Civ.P. 54(b); *see supra* page 873 (finding that injustice caused by delay outweighs inconvenience of possibly hearing two appeals in cases such as this one); *cf. Wilson,* 564 F.2d at 1318 (citing Rule 54(b) as support for the proposition that a Tax Court decision dismissing some but not all the taxpayer's claim was immediately appealable). It is harder to say the same of the Second and Sixth Circuit's opposite rule which delays appeal of *all* finally decided claims until the conclusion of the entire proceeding.

In sum, this is a final decision, and we are aware of no statutory or policy bar under § 7482 or otherwise that requires us to decline the appeal.

### B. *The Merits*

#### 1. The Tax Court's "Objective Indication" Test

▬ InverWorld claims that the Tax Court erred in finding that *it* had no jurisdiction to grant InverWorld's proposed amendment to its original petition. Inver-World does not dispute the Tax Court's premise that, to qualify for amendment, the original petition must have contained some objective indication of its intent to contest the corporate tax deficiencies. Rather, its primary objection is to the Tax Court's determination that, to display such an objective indication, the original petition must contain several specific elements—the amount of the deficiency assessed, the amount contested, and the years in dispute. Mindful of our understanding that § 7482(a)(1) requires the same scope of review of Tax Court cases as those from decisions of the district court, *see supra* page 874, we review the Tax Court's formulation of this test of general applicability *de novo*. At the same time, we are aware that the Tax Court deserves some deference for its significant expertise on what barebones allegations are essential to supply notice in tax deficiency cases. *See Vukasovich, Inc. v. Commissioner,* 790 F.2d 1409, 1413 (9th Cir.1986) (emphasizing

that, even though review in this context is *de novo,* circuit courts should defer to Tax Court decisions when uniformity and expertise concerns are significant). Applying both principles, we find that the Tax Court's objective indication rule is a reasonable test for interpreting the scope of an original redetermination petition and that it is consistent with prior Tax Court practice and procedure.

### a. Consistency with Tax Court Rules

InverWorld, relying on the Tax Court's use of notice pleading, *see* TAX CT. R. 31(a),[7] argues that the Tax Court must make a case-by-case determination of whether a petition contains sufficient indications of an intent to contest a deficiency determination and may not formulate any general rules or require any specific elements to be in all petitions. But InverWorld sees only the empty half of the bottle. The Tax Court's rules also contain other extensive and more specific requirements for a valid petition. Rule 34(b) mandates that a petition contain, among other things: (1) the petitioner's place of business, mailing address, and identification number; (2) the date of mailing of the deficiency notice and the IRS office from which it issued; (3) the amount of the deficiency alleged; (4) the amount contested; (5) the year(s) for which the deficiency was alleged; (6) concise state-

ments of the specific errors committed by the Commissioner; (7) clear and concise statements of facts on which the allegations of error are based; (8) an attached copy of the notice of deficiency; and (9) a prayer for relief.[8] This list is not a mere hortatory enumeration of the components of a well-pleaded petition; the court's rules specifically warn that "[f]ailure of the petition to satisfy applicable requirements may be ground for dismissal of the case." TAX CT. R. 34(a). More importantly, many of these items, including those emphasized by the Tax Court here, have long been viewed as necessary to invoke the Tax Court's authority to hear the case. *See* MARVIN J. GARBIS, PAULA M. JUNGHANS & STEPHEN C. STRUNTZ, FEDERAL TAX LITIGATION ¶ 5.04, at 5-27 (1985) ("This information [listed in Rule 34(b)(1) through 34(b)(3)] is essential to the determination of whether the Tax Court has jurisdiction to hear the petitioner's case. Because it is a statutory court, the Tax Court must construe narrowly its authority to hear a case, and it will not enlarge its jurisdiction for equitable reasons if the petitioner fails to assert an adequate basis for a hearing before the court."). By mandating that certain of its most basic rules be met to invoke its jurisdiction, the Tax Court steers a middle course between the *ad hoc* inquiry that InverWorld endorses and rigid adherence

---

**7.** Rule 31(a) states: "The purpose of the pleadings is to give the parties and the Court fair notice of the matters in controversy and the basis for their respective positions."

**8.** Rule 34(b) states:

The petition in a deficiency or liability action shall contain ...

(1) In the case of a petitioner other than a corporation, the petitioner's name and legal residence; in the case of a corporate petitioner, its name and principle place of business or principal office or agency; and, in all cases, the petitioner's mailing address and identification number....

(2) The date of the notice of deficiency or liability, or other proper allegations showing jurisdiction in the Court, and the City and State of the office of the Internal Revenue Service which issued the notice.

(3) The amount of the deficiency or liability, as the case may be, determined by the Commissioner, the nature of the tax, the year or years or other periods for which the determi-

nation was made; and, if different from the Commissioner's determination, the approximate amount of taxes in controversy.

(4) Clear and concise statements of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency or liability....

(5) Clear and concise lettered statements of the facts on which petitioner bases the allegations of error, ....

(6) A prayer setting forth relief sought by the petitioner.

(7) The signature, mailing address, and telephone number of each petitioner or each petitioner's counsel, ....

(8) A copy of the notice of deficiency or liability, as the case may be, which shall be appended to the petition, and with which there shall be included so much of any statement accompanying the notice as is material to the issues raised by the assignments of error....

to all the requirements listed in the rules. Such a course is not only entirely consistent with the Tax Court's rules but seems eminently reasonable as well.

Moreover, we do not agree with InverWorld's assertion that the Tax Court's objective indication test is at loggerheads with its announced principles of notice pleading. The Tax Court has not forced petitioners to follow any technical form, plead any particular legal theory, or provide detailed factual allegations to support its redetermination claim in order to invoke jurisdiction. It has merely required that easily accessible information—the amount of money that the Commissioner thinks the taxpayer owes, how much the taxpayer thinks she owes, and for what period—be included somewhere in the petition. These straightforward requirements seem minimally necessary to frame the dispute between the taxpayer and the Commissioner, *i.e.*, to provide notice of what is at issue. *Cf.* 5 WRIGHT & MILLER, *supra*, § 1202, at 72 (modern notice pleading still contemplates that the parties will refer to the occurrences sued upon). In sum, we see no tension between the Tax Court's objective indication rule and the essential concept of notice pleading.

### b.  *Consistency with Tax Court Precedent*

InverWorld further alleges that the test articulated by the Tax Court here is invalid because it is inconsistent with prior Tax Court precedent. Although we agree that no prior Tax Court cases lay out the specific objective indication test articulated here, all of the cases cited to us are consistent with the Tax Court's ruling in this case. Thus, the Tax Court's newly announced standard merely amounts to an appropriate extrapolation from prior cases. For example, in *Normac, Inc. v. Commissioner*, 90 T.C. 142 (1988), the Tax Court granted a motion to dismiss a part of a petition contesting deficiencies alleged against a subsidiary on the familiar grounds that the original petition did not contain any objective indication of an intent to contest the determination made against the subsidiary. *See id.* at 147–50. In so doing, the Tax

Court emphasized the precise factors that it relies upon here: "The petition does not indicate the amounts of the deficiencies determined against [the subsidiary], nor the amounts of the deficiencies [the subsidiary] is contesting, nor the years in dispute as to [the subsidiary]." *Id.* at 149. Similarly, in *O'Neil v. Commissioner*, 66 T.C. 105 (1976), the Tax Court found that it did not have jurisdiction over one year of a multiyear dispute largely because there was no mention of the alleged deficiencies for that year in the petition (even though the notice of deficiency for that year was attached). *See id.* at 107.

In attempting to undermine the test announced here, InverWorld relies on language from *Efco Tool Co. v. Commissioner*, 81 T.C. 976 (1983), to the effect that jurisdiction will be found as long as there is a "reasonable effort to comply" with applicable rules. *Id.* at 982. But the court only made that statement *after* noting that all necessary information was in the petition and that it gave adequate notice. *See id.* Here, the Tax Court has decided that there was no adequate notice—no objective indication of an intent to contest—because of the absence of certain basic facts in the petition. Obviously, that determination is not inconsistent with the *Efco Tool* court's willingness to be flexible in finding jurisdiction after a certain threshold of notice is reached.

Similarly, InverWorld overstates the import of language in *Scott v. Commissioner*, 2 T.C. 726 (1943), proclaiming that the Tax Court would engage in a "fair construction of the whole petition." *Id.* at 729. In that case, all the necessary facts were in the petition. The dispute centered around whether statements made in other places in the petition were sufficient to imply a prayer for a certain type of relief (a determination that there had been an overpayment and not just that there was no deficiency). Thus, the cited language shows only that the Tax Court will look at all parts of the petition in an effort to be equitable; it does not imply that central facts need not be

*somewhere* in the petition in order to preserve jurisdiction.[9]

The Tax Court's objective indication rule is in accord with its rules and prior cases. Since InverWorld's petition did not include the specific allegations as to corporate income tax that the Tax Court has said are the minima necessary to confer jurisdiction, it correctly declined to entertain Inver-World's corporate tax claim.

## 2. The Totality Approach

■■■ Even were we to undertake the open-ended review of the whole petition that InverWorld seeks, we would still be inclined to agree with the Tax Court that "there is simply no objective indication whatsoever to support [the] conclusion" that InverWorld intended to contest the corporate income tax deficiencies. The thrust of InverWorld's argument on this score is that the use of the umbrella term "income tax" in its petition provided the necessary indication that it wished to contest *both* the liability assessed because of InverWorld's responsibility to withhold money due in income tax for others and the liability assessed for its own corporate income taxes. These are two quite separate types of tax, however, with different statutory sources and principles of governing law. *See S–K Liquidating Co. v. Commissioner*, 64 T.C. 713, 716–18 (1975). It follows that InverWorld may not rely on a general statement that it contested "all income tax"; instead, it must demonstrate an independent intent to challenge each type of tax liability. InverWorld assuredly did not do that in its original petition. All the objective indications in the document suggest that InverWorld intended to contest only *one* deficiency, *i.e.*, the withholding tax deficiency alleged in the First Notice.[10] Only the amounts of the withholding tax deficiency were mentioned, only the First Notice was attached to the petition, and the petition specifically alleged that the Commissioner erred in determining that Inver-World had to file *withholding* tax returns.[11] Under the circumstances, we have little difficulty finding that there was no objective indication of an intent to contest the corporate income tax deficiencies asserted in the Second Notice in InverWorld's original petition.

## III. CONCLUSION

While we might sympathize with Inver-World's plight—the heavy penalty assessed for its inadvertence in formulating its original petition—the Tax Court's jurisdiction was circumscribed by that petition and the claims it can reasonably be construed to have noticed. By any reading, Inver-World's original petition did not evince an intent to challenge the corporate income

9. InverWorld does point to one recent case where objective indicia of an intent to challenge a deficiency were found without the presence of the criteria articulated in this case. *See Truskowsky v. Commissioner*, 55 T.C.M. (CCH) 1332 (1988). That case, however, is a memorandum opinion of a "special trial judge" which has no precedential effect. *See Nico v. Commissioner*, 67 T.C. 647, 654 (1977) ("[W]e consider neither revenue rulings nor Memorandum Opinions of this Court to be controlling precedent.").

10. InverWorld also alleges that the First Notice was a "hybrid" that referred to both corporate income and withholding taxes and thus that any reference to that document invoked jurisdiction over both types of tax. We are unpersuaded. InverWorld relies on the fact that the First Notice alleged that InverWorld had "received" income, and that withholding tax is predicated not on receipt of funds, but on paying income or causing it to be paid. But, as the Commissioner points out, "receipt" of income belonging to a nonresident alien is one of the predicates to withholding tax liability under 26 U.S.C. § 1441(a). InverWorld also emphasizes that the Statement accompanying the First Notice used the word "income tax." But the use of that general term in the Statement (the table that showed how the deficiency was computed) cannot override the clear references to withholding at the beginning and throughout that notice.

11. Finally, InverWorld emphasizes that the Commissioner in its answer to its petition "admitted" the allegations in the petition that referred generally to "income tax" liability. But the Commissioner merely responded "admits" to the portion of the petition that set the amounts of withholding tax liability. As the Tax Court found, the most reasonable reading of that "admission" is that the Commissioner was simply agreeing that the amounts set out in the petition were correct.

tax deficiencies. Accordingly, the decision of the Tax Court is

*Affirmed.*

MIKVA, Chief Judge, concurring in part and concurring in the judgment:

I concur in the judgment on the merits, but I do not believe it was necessary for the court to take on the complex issue of jurisdiction in order to reach the merits in this case. As we stated two terms ago in *Cross–Sound Ferry Services, Inc. v. I.C.C.,* " 'when the merits of a case are clearly against the party seeking to invoke the court's jurisdiction, the jurisdictional question is especially difficult and far-reaching, and the inadequacies in the record or briefing make the case a poor vehicle for deciding the jurisdictional question, we may rule on the merits without reaching' the jurisdictional question." 934 F.2d 327, 333 (D.C.Cir.1991), quoting *Adams v. Vance,* 570 F.2d 950, 954 n. 7 (D.C.Cir.1978).

This case has all the attributes that make pretermission of the jurisdictional issue appropriate. First of all, InverWorld's claim that the Tax Court erred in holding that InverWorld's petition did not contest the corporate tax deficiencies is so obviously groundless that our decision on the merits was virtually a foregone conclusion. Second, as the majority opinion demonstrates, the jurisdictional question is particularly intricate and unsettled. Our sibling circuits are split on whether they have jurisdiction to hear Tax Court orders which dispose of one or more, but not all, joined claims, and neither camp clearly has the better of the argument.

Finally, this case is an especially poor vehicle for deciding the jurisdictional issue. Because both parties want us to decide the appeal on the merits, we do not have the benefit of an adversarial presentation of the jurisdictional problem, and the supplemental briefs addressing the issue are not illuminating. *See Secretary of the Navy v. Avrech,* 418 U.S. 676, 678, 94 S.Ct. 3039, 3040, 41 L.Ed.2d 1033 (1974) (per curiam) (skipping directly to the merits and "leav[ing] to a future case the resolution of the jurisdictional issue" because "even the most diligent and zealous advocate could find his ardor somewhat dampened in arguing a jurisdictional issue where the decision on the merits is ... foreordained.")

Consequently, while I wholly concur with the majority's analysis of the merits, I would bypass the jurisdictional question and "leave those issues for another day." *Id.* at 678, 94 S.Ct. at 3040 (Stewart, J., concurring).