## COSTIGAN v. ADKINS et al.[*]

Court of Appeals of District of Columbia.
Submitted January 5, 1927. Decided
March 7, 1927.

Petition for Rehearing Denied April 23, 1927.

No. 4455.

Attorney and client ⬤⟿58—Attorney's failure to disclose loss of clients' money, which he was authorized to use, held misconduct warranting suspension, but not disbarment (Code, § 219).

Evidence that attorney, receiving money from clients to be paid on property purchased, which he was negotiating, after being authorized to use it until deed was ready for delivery, invested it disastrously, and when called on to make payment deceived his clients and raised money necessary to make payment by giving trust deeds on property purchased, title to which was being taken in his name, *held* to show unprofessional conduct, warranting suspension for 18 months, under Code, § 219, but not warranting disbarment; there having been no intent to defraud and payment in full of trust deeds.

Appeal from Supreme Court of District of Columbia.

Disbarment proceeding by Jessee C. Adkins and others, members of the Grievance Committee of the Supreme Court of the District of Columbia, against Ignatius J. Costigan. From a judgment of disbarment, defendant appeals. Judgment modified, to provide for suspension only.

G. P. Hoover and M. H. Beach, both of Washington, D. C., for appellant.

R. J. Whiteford and C. F. R. Ogilby, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This is an appeal from an order and judgment of the Supreme Court of the District of Columbia, disbarring the appellant from practice as an attorney at law of that court. The case was heard and decided upon charges preferred by the grievance committee, the answer of the defendant, and certain corroborating exhibits.

It appears from the record that the defendant was a member of the bar of the District of Columbia, and among his clients were two brothers, named Hughes, who employed him as their agent and attorney in the business of purchasing certain real estate which they desired to have conveyed to their sister. They intrusted the transaction entirely to him, and did not make themselves known to the vendor. Thereupon he negotiated for the purchase of the property and closed a contract with the owner at the agreed price of

*Certiorari denied 47 S. Ct. 769, 71 L. Ed. —.

$9,000 cash. In the writing of the contract the name of defendant's stenographer was given as the purchaser, but before the conveyance was executed defendant, with the consent of his clients, directed that the property should be conveyed to himself; it being agreed and understood that, as soon as the deed should be delivered to him, he would execute and deliver a deed to their sister. On November 10, 1921, in pursuance of this arrangement the sum of $1,000 was delivered to him by his clients, to be applied upon the agreed price, and on April 24, 1922, the further sum of $8,600 was paid to him likewise. It was understood that this sum would cover the purchase price, together with incidental costs and expenses estimated at $600. After the delivery of these sums to defendant, it was found that the completion of the contract would be delayed for some time, because of controversies between certain of the owners concerning the distribution of the purchase money, and that it would take several months to get a deed of conveyance. Whereupon the clients agreed that in the meantime defendant might make use of the money in his hands for his own purposes and pay interest upon it, with the understanding that he should have it ready when necessary to close the contract.

It happened that at this time defendant was also acting as attorney for the Mexican government and believed that Mexican bonds were about to rise in market price. He accordingly invested all the funds aforesaid, together with money of his own, in Mexican bonds. The bonds proved worthless, and the money was entirely lost; consequently, when the conveyance was ready for delivery, he was unable to produce the money necessary to pay the purchase price. The defendant then concealed these facts from his clients, and permitted them to believe that he was paying for the property with the money theretofore loaned to him. In fact, however, he obtained the funds required in the settlement by means of placing trust deeds upon the property, all of which was done without the knowledge of his clients. The deed to defendant was dated July 12, 1922, and was delivered on February 6, 1923; but he failed to make any conveyance to the sister of his clients, although frequently requested so to do. In November, 1925, the clients discovered the existence of the trust deeds placed by defendant upon the property, and in May, 1924, they brought suit against him. By June 6, 1924, defendant succeeded in releasing the trust deeds and then conveyed the property to the rightful party free of all incumbrances.

The defendant in his answer says:

"When the deed was ready, I did not have the money to pay the purchase price. I now believe that I should have so reported to Mr. Hughes; but I then believed that I would have the money in a short time, that acquisition of the property for my clients was vitally important to them, and that it would not do to let the opportunity to acquire it get away. I thought it my duty to secure it for them, and to borrow the necessary amount on the property was the only way I could do it. The risk or peril of my clients would not be increased thereby, and I could pay off the loans and convey clear title to Miss Hughes, who had been named to receive the title. I had known the Hughes family over 30 years, and had done considerable business for them. I had a feeling of pride against disclosing my present inability, and was convinced that I could pay the trusts and convey in a short time. I knew that the Hugheses were in a hurry about acquiring title, but were principally concerned in having it secured for them. Every dollar of the proceeds of the loans was paid on account of purchase money and expenses through title company. The said legal proceedings, commissions to agents, and transfer expenses made the total expenses above $1,000, and I paid out of my own pocket about $413.50 more than I had received from the Hugheses, not including any expense incident to the said loans. When I received the deed, I informed my clients I had taken title in my name, but I did not disclose my procedure. I acquired the property February 6, 1923. I went to Europe on business for the Mexican government May 15, 1923, and returned September 14, 1923. My fee for that business was more than the said loans, but has not yet been paid, though not disputed. Therefore I could not pay off the trusts on my return. I was away from the city, off and on, the greater part of the time between November, 1923, and May, 1924, and neglected and failed to attend to this and other business; but in January, 1924, I paid off the second trust, and on June 6, 1924, I paid off the first trust, and conveyed the property to Miss Hughes clear of incumbrances. I did not know until June, 1924, that the equity suit mentioned in the charge had been filed. I never refused to convey the property as agreed, although to several inquiries made by Mr. Hughes I said I would have things ready to convey in a short time. I can now see that my absence from the city so much and my inattention to the business made the Hugheses suspicious, but I never had an intent to defraud them. I paid off the trusts and conveyed at my first opportunity."

Upon the foregoing facts the lower court held that defendant was guilty of deceit amounting to unprofessional conduct, and entered an order and judgment disbarring and expelling him from membership in the bar of the Supreme Court of the District of Columbia. This appeal was then taken.

The applicable provisions of the District Code read as follows:

"Sec. 219. That said Supreme Court, in general term, shall have full power and authority to censure, suspend from practice, or expel any member of its bar for any crime, misdemeanor, fraud, deceit, malpractice, professional misconduct, or any conduct prejudicial to the administration of justice. * * * "

Upon a consideration of the record we agree with the lower court that the defendant's conduct was unprofessional, and fell within the denunciation of the statute. But we believe that the ends of justice and of public policy may be adequately met by imposing a sentence of suspension, instead of absolute disbarment upon him. We are convinced that he did not enter into this transaction with intent to cheat or defraud his clients, nor did he at any time entertain such a purpose. His clients, for what they believed to be their benefit, loaned their money to him at interest, upon the understanding that the loan would be promptly repaid when required. The money, however, thereby became the property of defendant, and he accordingly assumed the relation of debtor to his clients. Morally and professionally he was bound in good conscience to invest the money with the utmost prudence and caution under the circumstances. He made an investment, however, which resulted in loss, and he found himself unable to produce the money when needed. It then became his duty frankly to disclose the facts to his clients. Instead of doing this, he deceived and misled them. But we are convinced that this was not done for the purpose of ultimately defrauding them, but with a view of securing time in which he might obtain funds with which to save the property for them. His conduct in deceiving his clients was most reprehensible, but he had no deliberate intention of fraudulently profiting at their expense. In this view of the case we think the judgment of disbarment may be modified. In re Adriaans, 28 App. D. C. 515; In re Gompers, 40 App. D. C. 333; In re Austin, 5 Rawle (Pa.) 203, 28 Am. Dec. 657; People v. Humbert, 51 Colo. 60, 117 P. 139; People v. Appleton, 105 Ill. 474, 44 Am. Rep. 812.

The judgment of the lower court, disbarring appellant as a member of the bar of that

court, is modified to the following extent, to wit: That, instead of the disbarment of appellant, it is ordered and adjudged that he be and he hereby is suspended from practice as a lawyer at said bar for the period of 18 months, commencing with the date of the judgment in the lower court, to wit, November 11, 1925, and ending with May 11, 1927, and that he shall pay the costs hereof, taxed at $——.