**In the Matter of Michael PALMISANO, Respondent–Appellant.**

No. 94–3809.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 5, 1995.

Decided Nov. 15, 1995.

Rehearing Denied Dec. 5, 1995.

Michael Palmisano (argued), Elk Grove, IL, pro se.

John P. Schnitker (argued), Michael J. Singer, Department of Justice, Civil Division, Appellate Section, Washington, DC, Susan Schroeder, Attorney Admissions Coordinator, Chicago, IL, for Executive Committee of the United States District Court for the Northern District of Illinois.

Before EASTERBROOK, MANION, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

After being disbarred by the Supreme Court of Illinois, Michael Palmisano was ordered to show cause why he should not be disbarred by the United States District Court for the Northern District of Illinois as a reciprocal measure. Under N.D.Ill.R. 3.51.D the court's Executive Committee "shall impose the identical discipline" unless one of four exceptions obtains. Palmisano believes that two of these exceptions apply: that the state proceedings suffered from an "infirmity of proof" (Rule 3.51.D.2) and that "imposition of the same discipline by this Court would result in injustice" (Rule 3.51.-D.3)—the latter principally because, in Palmisano's view, any discipline at all would violate the first amendment to the Constitu-

tion. The district court disagreed and, in a brief order signed by the Chief Judge "for the Executive Committee", disbarred Palmisano.

■ Palmisano's appeal presents an immediate difficulty. Disbarment sounds like an administrative rather than a judicial step, an impression reinforced by its assignment to the Executive Committee, the administrative arm of the court. See N.D.Ill.R. 1.02.A. Persons dissatisfied with administrative action of a district court must protest to the Judicial Council of the circuit, the circuit's administrative body. See 28 U.S.C. § 332(d)(1). An appeal under 28 U.S.C. § 1291 is proper only from a final decision in a case; so if disbarment by the Executive Committee is administrative, we must dismiss the appeal for want of jurisdiction. One court of appeals has done exactly this. *Brooks v. Laws*, 208 F.2d 18, 22–30 (D.C.Cir. 1953).

An alternative way to approach the subject, however, is to ask whether disbarment is supposed to be a "judicial" decision. If the answer is yes, then the next question is whether the Executive Committee is entitled to disbar a lawyer. If disbarment is judicial but the Executive Committee's purview is administrative, then we have jurisdiction and must reinstate Palmisano to the bar without reaching the merits of his claims. The district court then could decide his case in a judicial fashion. But if the Executive Committee is entitled to render judicial decisions, we would proceed to the merits.

■ Disbarment is not an adversarial proceeding. But the discipline or disbarment of an attorney presents a case or controversy within the meaning of Article III of the Constitution, because it has concrete adverse effects on the attorney that can be rectified by further judicial action. The Supreme Court has adjudicated numerous attorney disciplinary matters. E.g., *In re Snyder*, 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985); *Theard v. United States*, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957); *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 378–79, 18 L.Ed. 366 (1866). Its only extended analysis of the subject, *District of Columbia*

*Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), concluded that an order rejecting an application for admission to a state bar was judicial in nature, activating the rule that an inferior federal court cannot reexamine the decision. Since *Feldman* we have regularly heard appeals from orders by district courts disciplining or disbarring attorneys. E.g., *In re Leaf,* 41 F.3d 281 (7th Cir.1994). So have other courts. E.g., *In re Gouiran,* 58 F.3d 54 (2d Cir.1995); *In re Medrano,* 956 F.2d 101 (5th Cir.1992); see also *In re Dreier,* 258 F.2d 68 (3d Cir.1958). Although none of our cases addresses the jurisdictional question, and therefore none represents a holding on the subject, *Feldman* supplies the essential analysis. Sending disciplinary cases to the Judicial Council—in this circuit a body of 21 judges—could not improve the quality of consideration or improve the dispatch of business, so there is no strong reason to characterize disbarments as non-judicial. Although *Brooks* considered the subject carefully before holding that attorney discipline is administrative, we conclude that it has been overtaken by *Feldman.* See also *Snyder,* 472 U.S. at 643 n. 4, 105 S.Ct. at 2880 n. 4. And the rules of the Northern District of Illinois offer some evidence that the court conceives of disbarment as a judicial action. If a material dispute of fact arises in the course of attorney discipline, the Executive Committee transfers the case to a single district judge for hearing and final disposition. N.D.Ill.R. 3.53.C. The Executive Committee therefore acts only when a legal decision can be made, as if on summary judgment.

Thus the question becomes whether the Executive Committee is entitled to conduct judicial business. Although a district court usually acts through single judges, 28 U.S.C. § 132(c) permits the court to sit in panels, or en banc, when a local rule so provides. The Executive Committee in the Northern District of Illinois comprises the court's chief judge and four others who serve for overlapping four-year terms. N.D.Ill.R. 1.02.E. Such a panel is entitled to enter judicial orders. There is, however, one potential fly in the ointment: the court's Clerk serves as an *ex officio* member of the Executive Com-

mittee. Although the Clerk is not entitled to vote, one court of appeals has held that the presence on the Federal Election Commission of nonvoting *ex officio* members who would not be eligible to participate as full members spoils its decisions. *FEC v. NRA Political Victory Fund,* 6 F.3d 821 (D.C.Cir. 1993), cert. dismissed, —— U.S. ——, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994). But the rationale of *NRA Political Victory Fund*— that the House and Senate cannot foist on a part of the Executive Branch officers who have not been nominated by the President and confirmed by the Senate—is inapplicable to the Executive Committee. No one foisted the Clerk on the Court; he was included at the judges' option and may be as easily removed. It is no more objectionable for judges to allow the Clerk to participate in deliberations than it is for judges to confide in and receive advice from their law clerks. Only the judges vote, and the Executive Committee therefore may exercise judicial power. The appeal is properly before us.

Illinois disbarred Palmisano for making many baseless accusations of crime (and lesser wrongs) against judges in 1990 and 1991. After being relieved as counsel in a case, and replaced by a firm that later received an award of attorneys' fees, Palmisano sent letters stating that "Judge Frank Siracusa is a crooked judge, who fills the pockets of his buddies." In correspondence sent to, or motions filed with, state judges, state administrative officials, and state and federal prosecutors, Palmisano characterized almost every judge who had participated in any of his cases as corrupt. Here are some illustrations:

- Judge Siracusa is called "Frank the Fixer" or "Frank the Crook".

- "Like [Judge Robert] Byrne, Frank the Crook is too busy filling the pockets of his buddies to act judicially."

- "Judge Lewis, another crook, started in about me ...".

- "[T]he crooks calling themselves judges and court employees ...".

- "I believe and state that most of the cases in Illinois in my experience are fixed, not with the passing of money, but

on personal relations, social status and judicial preference."

- "Chief Justice Peccarelli [sic], your response is illustrative of the corruption in the 18th Judicial District."
- "When I stand outside the Court stating that Judge Peccarelli is a crooked judge who fills the pockets of his buddies, I trust Judge Peccarelli will understand that his conduct creates the improper appearance, not my publication of his improper conduct."

Later Palmisano sent an ex parte communication to a state court, asking that an appeal he was handling not be assigned to certain judges of that court. The letter included these statements:

- "I believe [Justices Unverzagt, Inglis, and Dunn] are dishonest.... If the case has been assigned to any of these three, I would then petition the court for a change of venue. Everyone should be assured that the court is honest and not filing [sic] the pockets of those favored by the court."

These and other events led to Palmisano's disbarment for violating numerous portions of the Illinois Code of Professional Responsibility (effective through July 31, 1990) and the Illinois Rules of Professional Conduct (effective August 1, 1990).

The Attorney Registration and Disciplinary Commission held a hearing, at which Palmisano's statements and related conduct were offered into evidence. Palmisano testified at this hearing, admitting all allegations but offering justifications for his behavior. The ARDC's hearing board found that the statements we have quoted (and many other, similar statements) are false, and that Palmisano had no factual basis for any of them. The board concluded that Palmisano made these statements in retaliation for adverse judicial rulings. A review board of the ARDC agreed, adding that Palmisano made his statements "with knowledge of their falsity or reckless disregard for their truth or falsity." The Supreme Court of Illinois then reviewed the ARDC's recommendation and disbarred Palmisano, leading to his reciprocal disbarment in the district court.

Because Illinois offered Palmisano a full evidentiary hearing, and because Palmisano admitted all of the factual allegations against him, the evidentiary record is quite sufficient. A hearing in federal court was unnecessary; the district court could accept the conclusions of the Illinois tribunals. See *Selling v. Radford,* 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917); *In re Leaf,* 41 F.3d at 284; *In re Jafree,* 759 F.2d 604 (7th Cir. 1985). Citing *In re Ruffalo,* 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968), which characterized disbarment as a "quasi criminal" proceeding, Palmisano contends that federal courts should employ a "reasonable doubt" requirement and therefore must make an independent decision—for Illinois used a "clear and convincing evidence" standard. Yet the norm in federal law is the preponderance of the evidence, even when the claim is fraud and the suit may visit ruin and disgrace on the loser. See *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Herman & MacLean v. Huddleston,* 459 U.S. 375, 390, 103 S.Ct. 683, 691–92, 74 L.Ed.2d 548 (1983); cf. *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *United States v. Masters,* 978 F.2d 281 (7th Cir. 1992). We have held that the characterization in *Ruffalo* does not require courts to employ the procedures of the criminal law in disbarment matters. *In re Daley,* 549 F.2d 469, 476–77 & n. 6 (7th Cir.1977). Proof beyond a reasonable doubt is a specialty of criminal law, and we agree with other courts of appeals that have held its use unnecessary in attorney-discipline proceedings. See *Medrano,* 956 F.2d at 102; *United States District Court v. Sandlin,* 12 F.3d 861, 865 (9th Cir.1993). Burdens of proof allocate risks of error; a high burden is appropriate only when the costs of error are one-sided. See *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *Brown v. Bowen,* 847 F.2d 342, 345–46 (7th Cir.1988). Disbarment is costly for an attorney, but permitting an incompetent or otherwise inappropriate person to practice law is costly for clients and the administration of justice. Courts need not sacrifice the interests of litigants to reduce the risk of erroneous imposition of costs on attorneys; to the contrary, the in-

terests of litigants deserve the greater protection. Illinois applied a standard at least as demanding as the federal approach; we need not decide whether the clear-and-convincing-evidence standard would be applied today in an independent disciplinary action in federal court. The district court was entitled to accept the state's findings.

Palmisano's principal argument is that the Constitution prevents either state or federal government from penalizing his conduct. Only the Supreme Court of the United States can review Palmisano's disbarment in Illinois. But state and federal tribunals may use different substantive criteria for membership in their bars. For example, a state may decide that the representative plaintiff in a class action must agree to bear the costs if the class loses, and may discipline attorneys who relieve their clients of that burden; but in federal court the attorney may pick up the costs in order to facilitate the device established by Fed.R.Civ.P. 23. See *Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir.1991). Thus discipline in state court of an attorney who paid the costs in a class action would not lead to a penalty in federal court; different standards of appropriate conduct lead to different responses. See generally *Theard, supra.* But this principle does not help Palmisano. Federal courts, no less than state courts, forbid ex parte contacts and false accusations that bring the judicial system into disrepute. See N.D.Ill.R. 40, RPC 3.5(i), 3.6, 8.4(a)(5). Some judges are dishonest; their identification and removal is a matter of high priority in order to promote a justified public confidence in the judicial system. Indiscriminate accusations of dishonesty, by contrast, do not help cleanse the judicial system of miscreants yet do impair its functioning—for judges do not take to the talk shows to defend themselves, and few litigants can separate accurate from spurious claims of judicial misconduct.

Courts therefore may require attorneys to speak with greater care and civility than is the norm in political campaigns. See *Florida Bar v. Went for It, Inc.*, —— U.S. ——, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995); *Gentile v. Nevada Bar*, 501 U.S. 1030, 1065–76, 111 S.Ct. 2720, 2739–46, 115 L.Ed.2d 888 (1991). Judges should hesitate to insulate themselves from the slings and arrows that they insist other public officials face, see *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), but given cases such as *Gentile* and *Went for It* the Constitution does not give attorneys the same freedom as participants in political debate. To the extent *Standing Committee v. Yagman*, 55 F.3d 1430 (9th Cir.1995), may hold that attorneys are entitled to excoriate judges in the same way, and with the same lack of investigation, as persons may attack political officeholders, it is inconsistent with *Gentile* and our own precedents, such as *Jaffree.* Accord, *In re Evans*, 801 F.2d 703 (4th Cir.1986); *In re Grimes*, 364 F.2d 654, 656 (10th Cir.1966). See also *Snyder, supra,* and *In re Sawyer*, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959), in which all of the Justices assumed or stated that a lawyer's false accusations of criminal conduct directed against named judges may be the basis of discipline. Even a statement cast in the form of an opinion ("I think that Judge X is dishonest") implies a factual basis, and the lack of support for that implied factual assertion may be a proper basis for a penalty. See *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).

If Palmisano had furnished some factual basis for his assertions, then we would need to determine whether either the Constitution or principles of sound judicial administration permit a sanction—for an attorney is not absolutely liable for every statement that turns out to be incorrect. It would unduly quell investigation and exposure of corruption to disbar an attorney who publicized suspicious conduct, just because the suspicions were dispelled. Palmisano lacked support for his slurs, however. Illinois concluded that he made them with actual knowledge of falsity, or with reckless disregard for their truth or falsity. So even if Palmisano were a journalist making these statements about a public official, the Constitution would permit a sanction. False statements, made with reckless disregard of the truth, "do not enjoy constitutional protection." *Garrison v. Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964). See also *Harte–*

*Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 659, 109 S.Ct. 2678, 2681–82, 105 L.Ed.2d 562 (1989); *McDonald v. Smith,* 472 U.S. 479, 484, 105 S.Ct. 2787, 2790–91, 86 L.Ed.2d 384 (1985) (same conclusion for claim based on right to petition for redress of grievances). Federal courts are no more willing to tolerate repeated, false, malicious accusations of judicial dishonesty than are state courts. Selection of the sanction is a subject on which appellate review is deferential. *Gouiran,* 58 F.3d at 56; cf. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The order disbarring Palmisano cannot be called an abuse of discretion and is therefore

AFFIRMED.