# United States Court of Appeals
## For the First Circuit

Nos. 07-8017
     07-2065

IN RE:  ALEXANDER ZENO,

Appellant, Respondent.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, <u>U.S. District Judge</u>]

Before

Torruella, Lynch and Howard,
<u>Circuit Judges</u>.

<u>Alexander Zeno</u> on brief pro se.

September 27, 2007

**Per Curiam**.    Before us are two attorney-discipline matters involving Attorney Alexander Zeno, which have been consolidated for consideration.    The first involves an appeal by Zeno from a disciplinary order imposed by the United States District Court for the District of Puerto Rico.    A five-judge panel, citing various incidents of alleged misconduct, imposed a pair of penalties--suspending Zeno from the practice of law before the district court for three months, and removing him from its Criminal Justice Act (CJA) panel for the fifteen months remaining in his present term.    The second involves a reciprocal-discipline proceeding initiated by this court, in which Zeno has responded to an order to show cause why we should not impose similar sanctions. Having scrutinized Zeno's submissions and heard oral argument, we affirm the district court order and, in the reciprocal proceeding, impose similar (although not identical) discipline.

I.

Although the district court's show-cause order set forth two central charges against Zeno, its disciplinary decision ended up focusing on one: what were deemed "disrespectful submissions" made to the court.[1]    The district court listed numerous examples of such conduct.    These consisted of pleadings from a pair of cases

---

[1]    We agree with the district court that the disposition of this first charge obviates the need to address the second, which concerned Zeno's objections to the manner in which his CJA vouchers had been processed.

that gave rise to the charges here, as well as those from other cases that were included as background material. We see no need to fully recount each of these incidents. One such submission--an "informative motion" filed by Zeno in which he complained about actions occurring at a status conference--provides a representative example. Among other remarks, Zeno there asserted as follows:

> [T]he Court, instead of seriously addressing the issues presented to it, along with [the Assistant U.S. Attorney (AUSA)], made a mockery of our request to safeguard the constitutional rights of the Defendant ....
>
> [T]he undersigned takes offense at [the AUSA's] continuous unprofessional conduct. In particular, his excessive and open[] laughing in court [at] our arguments as if we were in the middle of a party making [j]okes.
>
> We particularly resent that the Court sanctioned [the AUSA's] disrespectful behavior by joining in the mockery of the argument of the undersigned ....
>
> This is not a laughing matter!... [T]his Court's apparent bias in favor of the government does nothing to help sharpen the system to produce the best of ... our judicial system.
>
> The Court has mocked the legal positions of the undersigned now and in the past.

United States v. Ruiz-Marty, D.P.R. No. 06-111, Dkt. # 96, at 2-4. Other filings included similarly intemperate and unsubstantiated allegations that various judges were guilty of, inter alia, dishonesty, partiality, stupidity, or possible criminality. The district court determined that these outbursts reflected a "chronic tendency" on Zeno's part to use "belligerent and insulting prose in addressing members of this court," which amounted to a violation of

-3-

Rule 3.5(d) of the ABA Model Rules of Professional Conduct.[2] That provision bars a lawyer from "engag[ing] in conduct intended to disrupt a tribunal"; the accompanying commentary cautions that "[r]efraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants." Model Rule 3.5(d), cmt. 4. What the record of Zeno's behavior demonstrated, the district court concluded, was a pattern of "disrespectful conduct disruptive of the judicial process."

"This court reviews a district court decision to impose discipline for abuse of discretion." In re Franco, 410 F.3d 39, 40 (1st Cir. 2005) (per curiam). In turn, "[a]s a general rule, discipline similar to that imposed in the [district] court will be imposed in a reciprocal proceeding." In re Williams, 398 F.3d 116, 119 (1st Cir. 2005) (per curiam). An exception will arise only if one of the four conditions set forth in Rule II.C of this court's Rules of Attorney Disciplinary Enforcement--deprivation of due process; infirmity of proof; threat of grave injustice; or need for different discipline--is present. See, e.g., In re Kersey, 402 F.3d 217, 217-18 (1st Cir. 2005) (per curiam) (citing Selling v. Radford, 243 U.S. 46, 51 (1917)); In re Williams, 398 F.3d at 119. "[T]he respondent attorney must carry the devoir of persuasion, by

_____

    [2]  The Puerto Rico District Court has adopted these Model Rules in its Local Rule 83.5(a).

-4-

clear and convincing evidence, that imposition of reciprocal discipline is unwarranted." Id.

## II.

We find no abuse of discretion on the part of the district court here--either in its decision to impose discipline or in its selection of sanctions. Zeno protests that his challenged remarks, even if intemperate, were unworthy of censure. In his view, the court overreacted by taking umbrage at appropriate criticism concerning judicial administration and other matters of public interest. We are unpersuaded. To be sure, judges are not immune from "the slings and arrows that they insist other public officials face." In re Palmisano, 70 F.3d 483, 487 (7th Cir. 1995); accord, e.g., Craig v. Harney, 331 U.S. 367, 376 (1947) ("Judges are supposed to be [persons] of fortitude, able to thrive in a hardy climate."). This is true even with respect to criticism voiced by attorneys, who "can play an important role in exposing problems with the judicial system." Standing Comm. on Discip. v. Yagman, 55 F.3d 1430, 1437 (9th Cir. 1995); see also U.S. Dist. Ct. v. Sandlin, 12 F.3d 861, 866 (9th Cir. 1993) (a lawyer "does not surrender his freedom of expression" once "admitted to the bar").

Nonetheless, "[i]t is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to

-5-

'free speech' an attorney has is extremely circumscribed."[3] Gentile v. State Bar of Nevada, 501 U.S. 1030, 1071 (1991). While "the line between legitimate criticism and insult can be a blurry one," Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1331 (11th Cir. 2002), we cannot fault the district court for concluding that Zeno crossed that line--particularly given the repeated nature of his unfounded accusations and the tone in which they were voiced. See, e.g., In re Cordova-Gonzalez, 996 F.2d 1334, 1335-36 (1st Cir. 1993) (per curiam) (noting that "[a]ttorneys have on a number of occasions been disbarred" for "vitriolic and ... unfounded personal assaults" on court and opposing counsel, and finding that record supported conclusion that counsel's "abusive and disrespectful language" violated ABA Model Rules); United States v. Cooper, 872 F.2d 1, 3 (1st Cir. 1989) ("Nor may an attorney seek refuge within his own First Amendment right of free speech to fill a courtroom with a litany of speculative accusations and insults which raise doubts as to a judge's impartiality."); cf. Sacher v. United States, 343 U.S. 1, 9 (1952) ("if the ruling is adverse, it is not counsel's right to resist it or to insult the judge--his

---

[3] In what he deems an "extremely important" point, Zeno asserts that his remarks in the Ruiz-Marty case, which we quoted earlier, "were not part of any pending litigation" since he was "no longer part of the case" when he filed the informative motion. Brief at 11. He is mistaken. Although he had moved to withdraw on that same day, he was not relieved of his duties until later. See, e.g., Dkt. #s 111-13. By district court rule, "[a] defense attorney in any criminal case shall continue the representation until relieved by order of this court." D.P.R. Loc. R. 157.2(b).

-6-

right is only respectfully to preserve his point for appeal").
Zeno's reliance on In re Snyder, 472 U.S. 634 (1985), is misplaced,
since the conduct in question there involved at worst "a single
incident of rudeness." Id. at 647.

Also unavailing is Zeno's contention that the
disciplinary proceeding was marred by several procedural flaws. He
first objects to the denial of his request that five district court
judges recuse themselves. Yet the two judges who made the
disciplinary referrals against him had no further involvement in
the matter. Zeno has not sought to rebut the reasons enumerated by
the other judges in their order denying such relief. That the
author of the show-cause order also served on the disciplinary
panel is unremarkable. And Zeno has not otherwise provided a
developed argument on appeal as to why recusal was warranted.[4] As
in Cordova-Gonzalez, "we see no reason to deem the judges' decision
to take part in the disciplinary proceedings an abuse of
discretion." 996 F.2d at 1336.

Zeno's other procedural complaints concern a lack of
discovery and a lack of "publicity." His requests were predicated
on another set of ABA model rules, which he has not shown to have
been adopted by the district court. In any event, the requested
discovery, as here relevant, was confined to contact information

---

[4] An example of his cursory analysis is his contention that
"there is no basis to believe" that affidavits filed under 28
U.S.C. § 144 were legally insufficient. Brief at 27.

-7-

about persons attending the status conference--information largely available to Zeno already. And not only has the disciplinary decision now been made public, but Zeno has identified no prejudice stemming from the fact that the proceeding was initially conducted under seal.[5]

In his final appellate challenge, Zeno insists that, even if some measure of discipline were warranted, the punishment imposed by the district court was unduly harsh. This complaint is directed at his removal from the CJA panel rather than his suspension. Pointing out that his law practice has been almost entirely confined to CJA appointments, Zeno protests that such a sanction effectively amounts to disbarment. Yet "[s]election of the sanction is a subject on which appellate review is deferential." In re Palmisano, 70 F.3d at 488. Removal from the CJA panel is hardly unprecedented in this context, see, e.g., United States v. Halliburton, 2000 WL 968021, at *2 (7th Cir. 2000) ("it seems to us imprudent to continue appointing Noll under the Criminal Justice Act, a step that would imply satisfaction with his services in that capacity"); In re Suspension of Att'y Jo Ann Fulton, 445 F. Supp. 2d 1325, 1326 (D. Wyo. 2006) (describing Tenth Circuit order), and we cannot fault the district court for considering such a sanction appropriate here. Zeno remains free to

---

[5] An additional procedural argument--that Zeno was entitled to an evidentiary hearing--was made informally below but has not been pursued on appeal.

represent private clients and to apply for reinstatement to the CJA panel in the future.[6]

## III.

The foregoing discussion largely suffices to resolve the reciprocal proceeding in this court. See, e.g., In re Cordova-Gonzalez, 996 F.2d at 1336 (noting that result of original disciplinary proceeding is of "substantial relevance" in determining result of reciprocal proceeding) (internal quotation marks omitted). We have little difficulty in concluding that Zeno has failed to establish by clear and convincing evidence that "imposition of reciprocal discipline is unwarranted." In re Williams, 398 F.3d at 119. With respect to the appropriate sanction, it turns out that one key issue has already been determined: through a coincidence of timing, Zeno's application for reappointment to this court's CJA panel has recently been denied, for reasons unconnected to the instant disciplinary matters. We add that, even had that development not occurred, Zeno has failed to establish that his removal from the panel would have been inappropriate under the standards governing reciprocal discipline.

Beyond this, and despite his lack of remorse, we choose not to suspend Zeno from the practice of law before this court.

---

[6] Contrary to Zeno's suggestion, we see nothing irrational or malicious in the decision to restrict his CJA appointments but to allow his continued representation of paying customers. Indigent defendants, of course, have less freedom of choice with respect to selection and retention of counsel.

The disciplinary findings, of course, did not involve his conduct on appeal.  Moreover, Zeno currently has (by our count) nine CJA cases pending before this court, in various stages of preparation.[7] We think that what little purpose would be served by a further suspension would be outweighed by the resulting inconvenience to his clients and this court.  Zeno may thus continue his representation in those pending appeals. Accord Halliburton, 2000 WL 968021, at * 2 (removing attorney from CJA panel but not from existing CJA cases).  Should he receive any further CJA appointments before his panel membership ends, he may appear in those cases as well.  And he may at all times represent private clients on appeal.  But once his CJA term expires, he will be barred from appearing in this court in new CJA cases unless and until he is reinstated to the panel.

The decision of the district court is affirmed.  The reciprocal-discipline proceeding is resolved in accordance with the terms of this opinion.

---

[7]  While we do not rely on this point, the district court's disciplinary order was actually ambiguous as to whether Zeno could remain in pending CJA cases.  We understand that the order has been construed to require his withdrawal therefrom.