# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 18, 2016        Decided April 14, 2017

No. 15-1401

WILFRED I. AKA,
APPELLANT

v.

UNITED STATES TAX COURT,
APPELLEE

———

On Appeal from the Final Order
of the United States Tax Court

———

*Wilfred I. Aka*, pro se, argued the cause and filed the briefs for appellant.

*Jennifer M. Rubin*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the briefs was *Michael J. Haungs*, Attorney.

Before: ROGERS, BROWN, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

Opinion concurring in part and concurring in the judgment filed by *Circuit Judge* ROGERS.

Concurring opinion filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Attorneys have duties not only to clients, but to opposing counsel and courts. Because our legal system depends on attorneys working with opponents and abiding by court orders, each court has the "inherent power" to control attorneys' admission to its bar and their expulsion. *In re Echeles*, 430 F.2d 347, 349 (7th Cir. 1970).

The United States Tax Court has disbarred Wilfred I. Aka for repeated failures to discharge his duties to the court, clients, and opposing counsel alike. Today we uphold its order, clarifying in the process the basis for our jurisdiction in this case and the proper standard of review.

I

First we must take up the question of whether we have jurisdiction to review the Tax Court's disbarment orders. Section 7482(a)(1) of the Internal Revenue Code (IRC) gives the federal courts of appeals (aside from the Federal Circuit) jurisdiction to review "decisions" of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil [bench trials]." 26 U.S.C. § 7482(a)(1). But civil bench trials—in which courts resolve disputes between adverse parties—differ significantly from disbarment proceedings, in which a court exercises its inherent power to police its own bar. *See Brooks v. Laws*, 208 F.2d 18, 22 (D.C. Cir. 1953) (a district court's application of its rules to deny someone admission to its bar "is not appealable"). This contrast raises the possibility that Tax Court disbarment orders—unlike Tax Court trial orders—fall outside our appellate jurisdiction under the IRC.

That concern is reinforced by the only other IRC provision providing hints on what counts as a Tax Court "decision[]." In

the course of explaining how to determine the date of entry of a "decision of the Tax Court," this second provision mentions only declaratory judgments and orders specifying how much a taxpayer still owes (i.e., notices of deficiency). 26 U.S.C. § 7459(c). That disbarment orders are neither might further suggest that they are not "decisions of the Tax Court" subject to our review. *See Commissioner of Internal Revenue v. Smith Paper, Inc.*, 222 F.2d 126, 129 (1st Cir. 1955) (reading a precursor to section 7459(c) as enumerating the *only* Tax Court "decisions" subject to appellate review).

We have rejected that suggestion in an earlier case, however, seeing "no reason to believe that . . . § 7459(c) . . . in any way meant to limit appellate jurisdiction over . . . decisions [of the Tax Court]." *InverWorld, Ltd. v. Commissioner of Internal Revenue*, 979 F.2d 868, 872 (D.C. Cir. 1992). Instead we have held that section 7482(a)(1) "is the controlling provision" for "appellate review." *Id.* Under that section, "finality of the Tax Court's order [is] the criterion." *Id.* Thus, we have jurisdiction to review final Tax Court orders.

And disbarment orders are final. *In re Fletcher*, 107 F.2d 666, 668 (D.C. Cir. 1939) (labeling them "final order[s] . . . reviewable by appeal"). They are "unequivocal determinations" that take "immediate" effect, leaving no issues unresolved. *InverWorld*, 979 F.2d at 872. Thus, the Supreme Court has reviewed disbarment orders of circuit courts, *see, e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968), and we have reviewed those of our district court, *see, e.g.*, *Fletcher*, 107 F.2d at 668. Disbarment orders of the Tax Court, whose decisions we review "in the same manner and to the same extent" as those of a district court judge, merit the same treatment. 26 U.S.C. § 7482(a)(1); *see InverWorld*, 979 F.2d at 872 (exercising jurisdiction over a Tax Court order when a "similar district

court decision would be considered final . . . because the court has completely disposed of the claim").

Although we have reviewed Tax Court disbarment orders on previous occasions, *see In re Thies*, 662 F.2d 771 (D.C. Cir. 1980); *Rodriguez v. U.S. Tax Court*, 398 Fed. App'x 614 (D.C. Cir. 2010); *Krouner v. U.S. Tax Court*, 202 Fed. App'x 470 (D.C. Cir. 2006), we have not expressly held that we have jurisdiction to do so. Today we confirm that we do.

Another preliminary matter: our court has not settled on a standard of review for such disbarment orders. *See Rodriguez*, 398 Fed. App'x at 614 (declining to choose between abuse of discretion and de novo review); *Krouner*, 202 Fed. App'x at 471 (same).

But long ago, the Supreme Court gave us guidance on that issue, observing in an opinion by Chief Justice Marshall that each court must exercise "discretion" in disciplining members of its own bar because "no other tribunal can decide [such matters] with the same means of information." *Ex parte Burr*, 22 U.S. 529, 530 (1824). A reviewing court may thus interfere "only in a plain case," where the disbarring court's "conduct was irregular or flagrantly improper." *Id.* at 530. Thus, in this appeal from the Tax Court's disbarment order, we will review the court's factual findings for clear error. Nonetheless, we will consider de novo appellant's argument that the Tax Court violated the Fifth Amendment's Due Process Clause.

II

Aka challenges the Tax Court's decision to disbar him and, alternatively, its failure to include in its disbarment order instructions for his reinstatement.

In 2009, Martin Kyere sought Aka's help in challenging the amount the Internal Revenue Service (IRS) said he owed in unpaid taxes. Aka filed a petition on Kyere's behalf for redetermination of the IRS's notice of deficiency, and then failed to appear for a discovery conference, failed to give opposing counsel key documents, failed to show up for trial, and went missing again when the hearing was rescheduled.

When the Tax Court ordered Aka to show cause why he should not be disciplined, he turned down a hearing and offered only a written response. In that response, Aka acknowledged his repeated failures to participate in the litigation, but offered as an excuse his belief that he no longer represented Kyere in the matter after his client failed to pay him on time. The Tax Court rejected that explanation, noting that even after the missed payment, Aka continued to hold himself out as Kyere's attorney in conversations with opposing counsel.

Assessing Aka's behavior against the ABA Model Rules of Professional Conduct and its own practice rules, the Tax Court reprimanded him for failing to provide competent representation (in violation of ABA Model Rule of Professional Conduct 1.1), failing to represent his client with diligence and promptness (against Model Rule 1.3), and failing to communicate with his client (against Model Rule 1.4). It also found that by entering his appearance in a case and then vanishing, Aka violated Model Rules 3.2 (requiring reasonable steps to expedite cases), 3.4 (requiring fairness toward opposing party and counsel), and 8.4(d) (barring conduct prejudicial to the administration of justice). Finally, the Tax Court determined that Aka had engaged in conduct "unbecoming a member of" its bar, against Rule 202(a)(4) of the Tax Court Rules of Practice and Procedure. Even so, the court stopped short of disbarment, on the grounds that Aka had

no prior disciplinary record, showed no bad faith, and was cooperative in its disciplinary proceedings.

Only three years would pass, however, before the Tax Court again ordered Aka to show cause why he should not be disciplined, this time for misconduct in seven other cases. Again the Tax Court accused him of missing hearings, ignoring opposing counsel's requests for documents and conferences, and disregarding court orders, all in violation of its practice rules and the ABA Model Rules of Professional Conduct. Again the court gave him an opportunity to make his case. The court first extended by more than three months the time period allowed for Aka to respond to its show-cause order, a period in which Aka submitted three written documents. The court also held a disciplinary hearing at which Aka appeared with counsel and provided testimony. These written and oral submissions were discussed in detail by the Tax Court in its memorandum suborder, but again the court found that Aka disputed no material facts but only blamed his clients. The court also noted that even if Aka was right that his clients had hampered his work on their behalf, he was still at fault for shirking his duties to opposing counsel and the court itself. As it also observed, "[t]he fact that Mr. Aka's failures are chronic and extend over the entire period that he has been admitted to this Bar, continuing even after his most recent disciplinary hearing, compel us to conclude that they are done knowingly." Supp'l App. at 27. The Tax Court thus disbarred Aka for violating its orders and rules, this time willfully, and a month later denied his motion to vacate or modify its disbarment order.

Now Aka asks us to vacate that disbarment order or, alternatively, to compel the Tax Court to offer steps he could take to be reinstated to its bar.

In Aka's telling, the Tax Court's failure to propose a plan for his reinstatement robbed him of due process in violation of the Fifth Amendment; and that court's decision to disbar him deprived him of substantive due process. Neither claim succeeds.

First, Aka offers no legal authority for his contention that the Tax Court violated his due-process rights. Due process requires a court pursuing disbarment to give attorneys fair notice and a chance to be heard, and to follow its published rules for disbarment proceedings. *Ruffalo*, 390 U.S. at 550; *In re Bird*, 353 F.3d 636, 638 (8th Cir. 2003). The Tax Court did so here; Aka does not deny that. He claims instead that the court deprived him of due process by failing to lay out steps for his reinstatement. Due process does not require such guidance, however, and Aka cites no authority to show that it does. Besides, the Tax Court has in fact published general conditions for reinstatement to its bar. Its rules instruct attorneys to show by clear and convincing evidence that their reinstatement "will not be detrimental to the integrity and standing of the Court's bar or to the administration of justice, or subversive of the public interest." Tax Ct. R. 202(f)(2)(B).

Second, Aka contends that the Tax Court denied him substantive due process by, for example, disbarring him absent evidence that he had committed any crime. But substantive due process protects "fundamental" liberties that are "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Under this banner, the Supreme Court has protected certain interests related to sexuality, marriage, and family life. Thus, it has relied on due process to enforce parents' right to shape their children's education, *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925); individuals' right to use contraceptives, *Griswold v. Connecticut*, 381 U.S. 479 (1965);

a woman's right to end a pregnancy, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 849-851 (1992); and a same-sex couple's right to engage in sexual relations, *Lawrence v. Texas*, 539 U.S. 558, 565-67 (2003), and form a civil marriage, *Obergefell v. Hodges*, 135 S. Ct. 2584, 2599 (2015).

It is impossible to wrench from these cases a substantive due process right to bar membership or against unduly harsh disbarment. Indeed, Aka's substantive due process claims are so "completely devoid of merit" that they do not trigger our jurisdiction to consider claims made under federal law. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).

Thus, neither procedural nor substantive due process provides a basis for reversing the Tax Court's order.

## III

We affirm the Tax Court's disbarment order, and decline to order it to propose additional steps for Aka's reinstatement.

*It is so ordered.*

ROGERS, *Circuit Judge*, concurring in part and concurring in the judgment: I join the court in holding that we have jurisdiction over Aka's challenges to the Tax Court's decision disbarring him from practice. Op. 2-4. Defining our standard of review turns out to be not as straightforward, however. *See* Op. 4; Concurring Op. 1 (Griffith, J.).

Congress has directed this court to review decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury[.]" 26 U.S.C. § 7482(a)(1); *see* Op. 2. A district court's ruling on a question of law is reviewed *de novo*, while its factual findings are reviewed for clear error, that is "even when there is record evidence to support it, . . . 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 778 F.3d 142, 148 (D.C. Cir. 2015).

Upon review of discipline imposed under decisions of the district court upon members of its Bar, this court has tended to embrace a fulsome scope of review without always defining it in the same terms. *See, e.g.*, *Halpern v. Comm. on Admissions & Grievances*, 139 F.2d 361, 361 (D.C. Cir. 1943); *Fletcher v. Laws*, 64 F.2d 163, 165 (D.C. Cir. 1933); *Costigan v. Adkins*, 18 F.2d 803, 804-05 (D.C. Cir. 1927); *In re Adriaans*, 28 App. D.C. 515, 524-25 (1907). *But see also Tulman v. Comm. on Admissions & Grievances*, 135 F.2d 268, 268 (D.C. Cir. 1943). For instance, in *Halpern*, the court explained that it had "read with care the evidence taken on the hearing" by the three-judge district court panel imposing the discipline and concluded that "the charge of professional misconduct was established by convincing proof, and . . . that the character of the misconduct fully justified the censure and the order of suspension." 139 F.2d at 361. This case reflects both deference to the district court's discretionary choice of discipline and implies an understanding that the ultimate evaluation of the appropriateness of the selected discipline is for this court to

decide.  By contrast, in *Tulman*, where the appellant claimed his discipline was too severe, the court stated that the district court's exercise of discretion in rejecting appellant's "explanation in palliation" "is not subject to review."  135 F.2d at 268.  Nonetheless, the court added that appellant had never denied the truth of the charges against him.  *Id*.  Presumably, then, this could have made a difference to the outcome on appeal. But the court further opined that if it had jurisdiction it would "approve" of the discipline, explaining that "[w]e are unable to escape the conclusion that appellant's sworn answer to the [Grievance Committee of the District Court's] complaint, as well as his own testimony in the [disciplinary] trial, fully justified the order of disbarment."  *Id*.  The analysis is consistent with the approach in *Halpern* to the extent it too implies a different result had this court concluded the selected discipline was unreasonably harsh.

In other cases, the court's articulation varies.  *In re Williams*, 256 F.2d 888, 888 (D.C. Cir. 1958), "found no error" in the disbarment of an attorney convicted of forgery. *Levine v. Comm. on Admissions & Grievances*, 328 F.2d 519, 520 (D.C. Cir. 1964), found "[t]he evidence as a whole is convincing that the conduct charged and found did indeed occur," and explained, in rejecting the attorney's view the discipline was "too harsh," that the court was "constrained to leave undisturbed the conclusion reached by the District Court as to the action it felt called upon to take," while observing, "[w]e would not be justified, in view of the conduct of appellant, in superimposing a different judgment of our own as to the remedy."  *In re Quimby*, 359 F.2d 257, 258 (D.C. Cir. 1966), was even more direct: because the facts admitted by appellant were sufficient to constitute the crime of embezzlement, "disbarment should ordinarily follow as a matter of course."  A year later the court appeared even more deferential, stating in *Sullivan v. Comm. on Admissions & Grievances*, 395 F.2d 954, 956 (D.C. Cir. 1967),

*supp. op. on reh'g* (D.C. Cir. 1968), that the conduct of which the attorney was found guilty — namely, violating rules against solicitation and conflicts of interest — "reflected unfavorably on his professional conduct," and the record "abundantly supports the view of the District Court panel of judges" that he should be admonished.

Perhaps most instructive of this court's understanding of its responsibility in reviewing attorney disciplinary decisions is the court's statement in *Costigan*:

> Upon a consideration of the record we agree with the lower court that the defendant's conduct was unprofessional, and fell within the denunciation of the statute. But we believe that the ends of justice and of public policy may be adequately met by imposing a sentence of suspension, instead of absolute disbarment upon him. We are convinced that he did not enter into this transaction with intent to cheat or defraud his clients, nor did he at any time entertain such a purpose.

18 F.2d at 804. This reflects the "clear error" standard for review of district court factual findings, *see, e.g.*, *Boehringer Ingelheim Pharmaceuticals*, 778 F.3d at 148, and more, namely an independent assessment, as a matter of law, whether the selected discipline is consistent with basic notions of fairness. Although *Costigan* involved review of a D.C. court decision, not a decision of a federal court, at that time this court was the appellate court for attorney disciplinary matters. *See Swain v. Pressley*, 430 U.S. 372, 375 n.4 (1977); *Pernell v. Southall Realty*, 416 U.S. 363, 367 (1974).

The differing articulations of the standard and scope of review of attorney discipline are not unique to this court. Our sister circuits appear to apply an abuse of discretion standard of

4

review, *see, e.g.*, *In re Zeno*, 504 F.3d 64, 66 (1st Cir. 2007); *In re Sealed Appellant*, 194 F.3d 666, 670 (5th Cir. 1999), sometimes describing it as a "highly deferential abuse-of-discretion standard," *In re Gouiran*, 58 F.3d 54, 58 (2d Cir. 1995), giving "substantial deference to the district court in disciplinary matters," *In re Evans*, 801 F.2d 703, 706 (4th Cir. 1986). One circuit announced plainly that it "must determine for itself whether the attorneys' conduct was so grievous as to require suspension." *In re Finkelstein*, 901 F.2d 1560, 1564 (11th Cir. 1990). All this suggested to one observer that the courts are applying a two-tiered approach under which the initial decision to sanction an attorney is reviewed under a traditional abuse of discretion standard, while "a different, and perhaps more stringent, standard of review" is applied to the choice of sanction — "whether the sanction imposed was 'just.'" Judith A. McMorrow et al., *Judicial Attitudes Toward Confronting Attorney Misconduct: A View from the Reported Decisions*, 32 HOFSTRA L. REV. 1425, 1449 (2004) (citing *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1543 (11th Cir. 1993)). In this vein, the Second Circuit has suggested more recently that a "more exacting" standard is warranted in attorney discipline cases "when the district court is accuser, fact finder and sentencing judge all in one." *In re Peters*, 642 F.3d 381, 384 (2d Cir. 2011) (quoting *Wolters Kluwer Fin. Servs., Inc. v. Scinvantage*, 564 F.3d 110, 113 (2d Cir. 2009)).

Notwithstanding different articulations, this circuit and the other circuits appear to apply an abuse of discretion standard of review that entails the traditional review of fact finding for clear error and *de novo* review for questions of law. *See generally Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995) (citing *Hunt v. Nat'l Broad. Co., Inc.*, 872 F.2d 289, 292 (9th Cir. 1989). What differs in matters of attorney discipline, however, is that appellate review, although deferential to the deciding court's choice, encompasses an ultimate determination

of the appropriateness of the chosen discipline. In *Costigan*, this court invoked the concept of "the ends of justice and of public policy." 18 F.2d at 804. Or, as other circuits have suggested, appellate review must ensure the chosen discipline conforms to "fundamental notions of fairness." *In re Jacobs*, 44 F.3d 84, 88 (2d Cir. 1994). Even in *Tulman*, this court apparently concluded that it was appropriate to indicate that it, too, was satisfied that the chosen discipline was not too harsh. 135 F.2d at 268. To this extent, there is a two-tiered abuse of discretion standard of review of attorney disciplinary cases.

In sum, this court's published opinions reflect a fulsome scope of review of the factual record and the disciplinary procedures afforded to the attorney. Although acknowledging that due deference is to be accorded to the discretionary choice of discipline by the imposing court, *see Ex parte Burr*, 22 U.S. 529, 530 (1824), this court all the while renders an ultimate assessment of what is appropriate in view of the facts found and the process afforded during the disciplinary proceeding, *see, e.g.*, *In re Snyder*, 472 U.S. 634, 647 (1985); *Sacher v. Ass'n of the Bar of City of New York*, 347 U.S. 388, 389 (1954); *see also In re Jacobs*, 44 F.3d at 88 (interpreting *Burr*). Succinctly put, this is an abuse of discretion standard of review, which encompasses examination of "whether the reasons given reasonably support the conclusion." *Kickapoo Tribe*, 43 F.3d at 1497 (quoting *Johnson v. United States*, 398 A.2d 354, 365 (D.C. 1979)).

Today, the court, much as in our unpublished opinions declining to choose between abuse of discretion and *de novo* review, purports to avoid making the choice again, going only so far as to adopt a clearly erroneous standard of review for factual findings and a *de novo* standard of review of constitutional Due Process challenges. Op. 4. But our precedent indicates this court will decide for itself the

appropriateness of a sanction in cases that present serious concern about the extent of discipline imposed. Whatever discomfort there might be to extending an abuse of discretion review to the disciplinary actions of an Article I court, *see Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 891 (1991), this court is bound by Section 7482(a)(1) and our interpretation of it. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996).

Upon applying an abuse of discretion standard of review, I am satisfied, for reasons stated by the court, *see* Op. 5-6; *see also* Concurring Op. 1-2 (Griffith, J.), that Aka's challenges present no basis to conclude that the Tax Court abused its discretion in barring him from continuing to practice as a member of its Bar. That Court's findings show that Aka's conduct warrants a sanction. The Tax Court's previous discipline of appellant provided fair warning of what is required of members of its Bar. In connection with his later failures to conform his conduct to its requirements, the Tax Court afforded Aka a full opportunity to present his defense and explanation. His explanations to the Tax Court and this court, and this court's review of the record, provide no reason to conclude under the circumstances that the Tax Court's choice was, as Aka maintains, too harsh.

GRIFFITH, *Circuit Judge*, concurring: Our panel opinion notes that we have jurisdiction to hear Aka's procedural challenge to the Tax Court's disbarment order, that this challenge fails, and that the Tax Court has not come close to depriving Aka of substantive due process.

I do not believe, however, that due process claims are the only ones that Aka has raised before us. He has also argued that the Tax Court's decision to disbar him—the result, and not simply the process—was too severe a penalty for his particular misconduct. As Aka raises it, this objection is not a constitutional one, rooted in due process or otherwise. It is simply an argument that in imposing such a grave and lasting penalty, the Tax Court abused its discretion.

I take no position here on whether we have jurisdiction to hear such non-constitutional challenges to disbarment orders. *Compare Tulman v. Comm. on Admissions & Grievances*, 135 F.2d 268, 268 (D.C. Cir. 1943) (holding that a challenge to a disbarment order's severity was "not subject to review in this [c]ourt"), with *Costigan v. Adkins*, 18 F.2d 803, 804 (D.C. Cir. 1927) (vacating an order disbarring an attorney and imposing instead a temporary suspension because "the ends of justice and of public policy" could be served just as well "by imposing a sentence of suspension, instead of absolute disbarment").

Rather, I write separately to acknowledge that Aka did indeed raise such non-constitutional challenges—and to note that we can remain agnostic on whether we can hear those challenges only because they would make no difference here.

After all, Aka does not dispute that he violated the Tax Court's rules of conduct. So his challenge to the severity of the disbarment decision really amounts to a challenge to the Tax Court's rules for members of its bar. He believes that they are too stringent—for example, that they should allow him to remain a member so long as he has committed no crime. But

the point of disbarment is not to "punish[]" the attorney but to "protect the courts and the public" against "persons unfit to practice." *In re Echeles*, 430 F.2d 347, 349 (7th Cir. 1970). Attorneys need not be convicts to merit disbarment; lawyerly incompetence is enough. Here the Tax Court has comprehensively documented Aka's failures to meet some of the basic demands of good lawyering—shortcomings that he does not dispute.

Likewise, Aka suggests that his conduct deserves at most a temporary sanction, citing at oral argument a case in which the Supreme Court of Utah vacated a lower court's disbarment order in favor of a six-month suspension. *See Ciardi v. Office of Prof'l Conduct*, 379 P.3d 1287 (Utah 2016). I would find this claim unavailing, too, if we had claimed the jurisdiction to entertain it. The attorney in *Ciardi* had flouted an order and disrupted proceedings in only one case, for which suspension was (in Utah) the presumptive sanction; here the Tax Court has disbarred Aka for more-serious misconduct spanning years, absent any presumption for lighter sanctions.

This court need not "respond specifically to every argument made by every appellant." *Troy Corp. v. Browner*, 129 F.3d 1290 (D.C. Cir. 1997). But disbarment orders are serious business. In reviewing them, we owe attorneys a thorough treatment of their arguments, however unpromising. I have written separately with that in mind.